No. 31,622

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARTON, *Appellee*, v. COMANCHE TOWNSHIP IN BARTON COUNTY, *Appellant.*

(32 P. 2d 497.)

Opinion filed May 5, 1934.

*R. C. Russell,* of Great Bend, for the appellant.
*Roy J. McMullen,* of Great Bend, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the board of county commissioners of Barton county against Comanche township in Barton county to recover a judgment for $2,100 on an oral agreement between these two governing bodies whereby the county was to take over seven miles of township road and to relieve the township from the expense of constructing and maintaining the same, and the township was to pay the county $300 per mile, or $2,100 therefor.

The court overruled a demurrer to the petition, and the answer of the defendant denied that it ever entered into any contract with the plaintiff, either oral or written, for the taking over and construction of such highway; that the township never held a legal meeting for the purpose of discussing such a contract; that if the plaintiff did build the same it did so of its own volition and at its

own expense, and that the township at a regular meeting refused to pay the claim of the plaintiff for the construction of said highway. At the close of the taking of evidence the trial court entered judgment for plaintiff for $2,100, from which judgment the defendant township appeals.

There is no question as to the legal existence of these two governmental organizations, nor as to their power and authority to make a contract concerning the county taking over such a highway and constructing and maintaining the same and the authority of the township to pay a reasonable compensation therefor. The real question is, Was a contract of this kind ever made? It is not so clear from the petition and proof that the plaintiff was acting as a board in its negotiations with the defendant in this connection, but we shall pass that point and for the purposes of the review before us consider that its own actions and conduct in the matter were regular and by the board, and shall give our first thought and attention to the question of whether the defendant made or entered into a contract with the county in regard to this matter.

In the first place the petition nowhere alleges that the action of the defendant township board was at a duly and regularly called meeting of the board, either general or special, but refers to "the alleged price" per mile, that "the county engineer, Martin Hall, entered into a discussion with the said township board relative to taking over seven miles of township road," "That, according to the terms of the conversation between Martin Hall, county engineer of Barton county, Kansas, and the township board . . ." that after the county engineer "had the conversation with the township board" a member of the township board "informed County Commissioner Ernsting and County Engineer Martin Hall" that it was agreeable. At another place the petition alleges:

"Plaintiff further says that work had not started on this project until each and every member of the township board of Comanche township, county of Barton and state of Kansas, had approved the project and had agreed orally that Comanche township would reimburse Barton county in the sum of $300 per mile, or a total of $2,100, and that during the construction of the said road all of the members of the township board of Comanche were present at various times and inspected the work."

Mr. Hall, the county engineer, was a witness for plaintiff and related conversations he had with different members of the township board at different times and places, once at the residence of the

township clerk when the clerk and the trustee were present, but he supposed it was not a regularly called or a specially called meeting; that he knew of no writing showing that the township board ever met and approved the project.

Mr. Ernsting, a member of the county board, testified that he talked with the trustee and clerk of the defendant board about the matter when they were at the home of the clerk; that he never had any writing from the township board about the matter; that it had always been customary to have a written agreement, but did not have such in this case; that he had never met with the township board to discuss the matter; and that he didn't know of the township board ever having a meeting to pass on this matter.

Both these witnesses said when they talked with the members of the township board separately, and when two of them were together, they were agreeable to the project.

Mr. Batchman, the township treasurer, called by the plaintiff, testified that he had a talk with the township trustee, who said he was in favor of the county taking over the road, and he replied if the other two members were in favor of it he would be too; that he was never notified of any called or special meeting of the board to consider the project.

The defendant called the other two members of the township board, who related conversations with County Engineer Hall and Commissioner Ernsting about the matter, but that no regular or special meeting of the township board had ever been called to consider the matter.

The following two sections of the statute give the organization of the township board of highway commissioners and the only way in which it can allow bills or transact official business:

"That the township trustee, clerk and treasurer of each municipal township in this state shall constitute the township board of highway commissioners for their respective townships. The township trustee shall be the chairman and the township clerk shall be the clerk of the township board of highway commissioners." (R. S. 68-523.)

"That the township board of highway commissioners shall hold regular meetings on the last Monday of March, June, September and December, and special meetings, as the occasion may require, at the call of the chairman or any two of the commissioners: *Provided,* That no bills shall be allowed or any other official business transacted except at a regular meeting or a special meeting at which all of the commissioners have had notice and at which at least two are present." (R. S. 68-524.)

It will be readily seen that the township board of highway commissioners could not in any way bind the township to any financial obligation without holding a regular or special meeting of the board of which all the commissioners had notice, and at which at least two were present. The evidence of the plaintiff fails to show any such meeting, or notice of such meeting to the absent member when two of them were together, and the evidence of the defendant positively shows no such notice was ever given or meeting held. Our attention has not been called to any interpretation or construction of these statutes, or as to the validity of any transaction attempted or claimed to have been had by members of the board outside of legal meeting, but there are decisions as to the act of individual members of other similar official organizations, such as the board of directors of a school district and the board of county commissioners.

In the case of *Aikman v. School District*, 27 Kan. 129, it was held:

"Where the power is vested in a district board of a school district composed of three, to contract with and hire a teacher for and in the name of the district, and a written contract is signed by two members of the board in the absence of each other, without consultation with each other, or with the other member, and without any meeting of the district board, upon the application of a party seeking to be employed as a teacher, such contract is not binding upon the school district." (Syl.)

The case of *Mincer v. School District*, 27 Kan. 253, was a suit upon a school-district warrant for a lightning rod put on the school-house, where the warrant was signed by the director, whose right to the office was questionable, and by the clerk, and it was held:

"That the decision of the court below was correct, and for this reason, if not for others: That the school-district order was never authorized, or allowed, or executed by the school-district board; and this for at least two reasons: First, that it was never authorized, or allowed, or executed at any legal meeting of the board, or indeed at any meeting of the board . . ." (Syl.)

It was held in *P. & F. R. Rly. Co. v. Comm'rs of Anderson Co.*, 16 Kan. 302, that—

"The county board, before it can act, must be convened in legal session, either regular, adjourned, or special; and a casual meeting of a majority of the commissioners does not create a legal session." (Syl. ¶ 2.)

In the case of *State, ex rel., v. Comm'rs of Seward Co.*, 36 Kan. 236, 13 Pac. 212, two members of the board of county commissioners pretended to canvass the vote of a county-seat election and the election of county and township officers without notice to, or the presence of, the third member of the board, and it was held:

"That the alleged canvass of the returns of the election for the county seat, and the declaration of the result, were not only irregular, but wholly invalid." (Syl. ¶ 1.)

Another county board case where the same principal was affirmed was *In re Troy*, 67 Kan. 186, 72 Pac. 531, in which it was said:

"A prisoner lawfully confined in the county jail for the nonpayment of a fine who is released by the sheriff without an order of the board of county commissioners, but upon the direction of two of the individual members thereof, may be retaken and reincarcerated without new or additional process or proceedings." (Syl. See, also, *Dunfield v. School District,* 138 Kan. 800, 802, 28 P. 2d 987.)

We must conclude that conversations of individual members of the township highway commission, and even the favorable discussion of the project by two of the members with a member of the board of county commissioners without a meeting of the township board, or notice of such a meeting given to the absent member of the commission, do not constitute a contract of the township nor create an obligation against the same.

These conversations are said in the petition to have taken place in the fall of 1931, about the county board taking over seven miles of the township road, and under section 1 of chapter 224 of the Laws of 1929, it could take over such "as have been improved by the township in accordance with the general plans and specifications furnished by the county engineer and in accordance with the requirements of this act," and presumably the $300 per mile was to put this township road in such condition as to meet the requirements of the act and the specifications of the county engineer, but this entire provision, above quoted, was omitted from section 1 of chapter 248 of the Laws of 1931, which became effective February 28, 1931, and is now R. S. 1933 Supp. 68-516, under which the county board can take over within certain limitations any township highway regardless of its construction by the township board.

Appellee relies in part upon an allegation in the petition, quoted above, as to the members of the township board being present at various times during the construction of the road and observing the work being done thereon. But as has frequently been held, officers cannot bind the organizations which they represent by their knowledge of improvements being made to their benefit as they would be bound individually. Officers must act officially to bind the territory which they represent and within the power and authority given

them by law. Several questions were asked the township officers along this line as if their personal knowledge of the construction work being done would bind the township. We think it does not make the township liable. It was said in *Salt Creek Township v. Bridge Co.,* 51 Kan. 520, 33 Pac. 303:

"Where the officers of a municipal township are without any power to make a contract for the building or purchasing of a bridge, and without any power to create a liability for a bridge against the taxpayers of a township, but, in violation of the provisions of the statute, a contract is made with a bridge company for the construction of a bridge in the township, and such bridge, after being completed upon a public highway within the township, is accepted by the township board and is used by the public generally, the township is not liable upon the contract, or for the reasonable value of the bridge, if the public records of the township fully disclose all the facts in the case, and the contractor furnishing the bridge has in no way been misled or deceived by the records of the township board. Those dealing with a township must see to it that its officers have power to act, if all the facts appear upon the face of the records of the township." (Syl. ¶ 4. See, also, *Pleasant View Township v. Shawgo,* 54 Kan. 742, 39 Pac. 704; and *Haun v. Lane County Comm'rs,* 138 Kan. 656, 27 P. 2d 269.)

This case originating as an appeal by the county board from the refusal of the township board to allow this claim filed the last time under the cash-basis law (Laws 1933, ch. 319), the trial court, as a part of the judgment rendered by it, included a provision about the issuance of township bonds as authorized by that law, but that portion of the judgment is necessarily left without a basis when the money judgment is reversed because of the want of a contract of any kind between the two organizations.

The judgment is reversed with directions to render judgment for defendant for costs.