No. 31,516

The City of Weir, The City of Scammon, The City of Columbus, The City of Baxter Springs and The City of Galena, *Appellants*, v. The Board of County Commissioners of the County of Cherokee, *Appellee*.

No. 31,517

The Board of County Commissioners of the County of Cherokee, *Appellee*, v. The City of Weir, The City of Scammon, The City of Columbus, The City of Baxter Springs and The City of Galena, *Appellants*.

(33 P. 2d 1108.)

Opinion
filed July 7, 1934.

*R. W. Emerson*, of Weir, *Don H. Elleman, Clarence E. Rumery*, both of Columbus, *V. J. Bowersock*, of Baxter Springs, and *S. C. Westcott*, of Galena, for the appellants.

*C. E. Shouse*, county attorney, and *A. L. Majors*, of Columbus, for the appellee.

The opinion of the court was delivered by

Smith, J.: These were actions brought under the provisions of chapter 319 of the Laws of 1933, commonly known as the cash-basis law. From a judgment denying relief the claimants appeal.

In case No. 31,516 the facts are that Cherokee county withheld from the various cities, which are claimants, certain of the tax moneys paid to the county treasurer of the county under the levy for the general fund of the cities in the January, 1933, settlement between the cities and the county. The amounts so withheld were the moneys expended in conducting the primary and general elections in the county for 1932.

The cities filed claims for these amounts under the cash-basis law. The theory of the cities is that if the county had a claim against the cities it should have filed a written, itemized, verified statement of its claim against each city. Such a statement, it is admitted, was not filed. The second ground relied on by the claimants

is that all tax moneys paid into the county treasury on tax levies made by appellants belong exclusively to appellants and should have been remitted in full to the respective treasurers of appellants, and appellee had no legal right or authority to take any portion of such tax moneys and appropriate it to its own use.

Briefly, the position of claimants is that the county stands in the same position as any person or corporation that has a claim against a city, and that since the county withheld the money in question from the cities without complying with the statute with relation to claims against cities it was wrongfully withheld and should be paid to the cities.

The position of the county is that it was entitled to withhold the money in question under the terms of R. S. 25-109. That section is as follows:

"All ballots cast in any general election or special election in the state, in any political subdivision thereof other than a school district, shall, after the taking effect of this act, be printed and distributed at public expense. The printing and distribution of ballots and all other expenses connected with or growing out of the provisions of this act, or that are necessary to provide for the elections thereunder, shall be paid by the townships and cities of the first and second classes; and it shall be the duty of the county commissioners to apportion such expenses to the townships and cities of the county in proportion to the votes cast at the last preceding general election in each township and city. *It shall be the duty of the county clerk to charge such expenses, as apportioned by the board of county commissioners, to the general fund of the several townships and cities of the first and second classes* . . . " (Italics ours.)

The above section leaves no doubt that it is the duty of the cities of the first and second classes and townships to bear the expense of conducting elections. The only fund out of which this expense can be paid is the general fund. For obvious reasons the printing and distribution of ballots must be conducted by the county. The statutes so provide. No doubt the legislature considered the entire situation when R. S. 25-109 was enacted. It provides for payment of the cost of printing and distributing the ballots, and for the payment to the county of the money so expended by directing the county clerk to charge such expenses to the general funds of the several cities. Clearly the only way in which the clerk can do this is by withholding the amount from the money distributed to the cities. We hold that the section provides ample authority for the county doing just what it did in this case.

In case No. 31,517 the county filed claims against the cities for money expended by the county in the elections for 1926, 1928 and 1930.

Because of arguments made by the cities the form of the claims will be set out. For the city of Weir the claim was as follows:

"City of Weir
    To Cherokee County General Fund, Dr.

| To election expenses due Cherokee county as per R. S. 1923, sec. 25-109, as per order county commissioners: | Amount claimed. | Amount allowed. |
|---|---|---|
| 1926 election | $318.25 | ....... |
| 1928 election | 259.21 | ....... |
| 1930 election | 259.21 | ....... |
| Total | $836.67" | ....... |

For the other cities the claim was as follows:

"City of Scammon, Kansas
    To Cherokee county general fund, Dr.

| | Amount claimed. | Amount allowed. |
|---|---|---|
| Cherokee County, Kansas. As per Commissioners' Journal (P), page 335. The county makes claim from the city of Scammon, Kansas, under sec. 25-109, R. S. 1923, for amount due said county general fund for the election years of 1926-'28-'30, in the amount of | $838.28" | ....... |

The claims were all disallowed by the cities. The county then appealed to the district court.

The cities objected to the introduction of any evidence for the reason that the claims were not made out in the form required by law, for the reason that they were barred by the statute of limitations, and for the reason that they were *res adjudicata.*

It was admitted that the expenses for the years in question were never deducted from the amounts collected by the county treasurer for the general funds of the cities of the second class and townships in the counties.

Over the objection of the cities the county clerk testified as to an entry in the commissioner's journal instructing the county clerk to make claims on the cities and townships for the election expenses for the years in question. The county clerk testified that in determining the amount of these claims he consulted his 1926 records and obtained the 1926 election expense, but that for the 1928 and 1930 election expenses he went to the auditor's records for such information; that he found from the records in his office the number

of votes cast, he took the number of votes cast in each township and city in the preceding general election and then prorated the election cost to each city and township and took that same proportion of election expenses and allotted it to that particular city or township.

The cities demurred to the evidence of the county on the ground that the evidence did not prove a claim against the cities. This demurrer was overruled. The cities then moved for judgment in their favor. The ruling on this motion was reserved by the court.

The cities then demurred to the evidence of the county for the reason that the apportionment upon which the various claims are based is void, illegal and in violation of the constitution of the United States and contrary to the laws of the state of Kansas and particularly the fourteenth amendment to the constitution of the United States and section 18 of the bill of rights of the state of Kansas. The trial court reserved its ruling on that demurrer. The cities then moved the court to reject each and all of appellee's claims for the reason that they were not properly itemized or properly made and presented as required by the terms and provisions of the statutes of the state of Kansas relating to cities of the second class, and particularly R. S. 14-441. This motion was overruled. The court then stated that it would take judicial notice of certain actions that had been filed in that court and judgments rendered. These actions were filed by the cities against the county under the cash-basis law to recover interest and penalties on delinquent taxes which had been collected by the county.

The cities then offered evidence which tended to show that the county had made claims to the townships similar to the claims made to the cities, that the townships had refused to pay the claims, and that no appeal had been taken against the townships.

The cities argue that the court erred in overruling appellants' objections to the introduction of evidence, in admitting evidence over the objection of appellants and in overruling motions of appellants to strike out portions of the evidence offered by the appellee.

The argument is based on the provisions of R. S. 14-441. That section reads as follows:

"All claims against the city must be presented in writing, with a full account of the items, and verified by the oath of the claimant or his agent, that the same is correct, reasonable and just; and no claim or demand shall be audited or allowed unless presented and verified as provided for in this section. . . . ."

The cities point out that this section was not complied with by the county and therefore the cities had no authority to pay the claims in question. The point is not good. The cash-basis law provided a comprehensive plan whereby the fiscal affairs of the municipalities of the state might be balanced. It superseded all other statutes bearing on that subject. The county complied with all the requirements of the cash-basis law when the claims were filed. There is no provision of that statute that requires a claim to be itemized. Had the cities desired an itemized statement when the case was presented in the trial court in order to enable it to properly prepare its defense, it could have asked the court for such an order, and the court, in its discretion, could have allowed it. Nothing of that sort was done.

The cities contend that the court erred in overruling their demurrer to the evidence of the county and in overruling motions of the cities for judgment on the evidence. The argument to sustain this contention is that the election expenses were paid out of the county general fund, that the taxpayers of the cities paid part of that fund and to tax them again to pay these claims would in effect be taxing them twice for the same thing. Here again the answer is that the cash-basis law provides for and requires a balancing of the books of the county and the cities. In the past the county has paid bills that should have been paid by the cities. The cities are indebted to the county for this amount. This fact is not denied by the cities. As far as the equities of the situation are concerned the taxpayers of the cities will be benefited by the amount that is paid to the general fund of the county on account of these claims.

The cities contend that the court erred in sustaining objections to evidence offered by appellants and in refusing to admit competent and material evidence offered by the cities. The argument to sustain this contention is that the county is pressing these claims against the cities and not against the townships. If this were true it would be no defense to a claim of the county against the cities. The fact that a creditor presses a claim against one debtor and does not press it against another cannot be used by the debtor who is being sued as a defense to the claim against him.

The cities contend that the claims being pressed in the present case were barred because they should have been raised by the county in the claims that were brought by the cities for interest on delinquent taxes. The argument is that these suits constituted a bal-

ancing of accounts between the cities and the county and that such accounts having been finally adjudicated the doctrine of *res adjudicata* applies and the county's claims cannot be made the subject of other litigation. The trouble with that argument is that the claims being pressed in these actions are on altogether different transactions from the claims pressed by the cities in the former action. They arise under a different set of facts and under different statutes. The county is proceeding in the manner provided by the cash-basis law.

The judgment of the trial court is therefore affirmed in both cases.