### No. 31,838

Levant Consolidated School District No. 24 in Thomas County, *Appellee*, v. Colby Community High-school District in Thomas County, *Appellant*.

(38 P. 2d 684)

Opinion filed December 8, 1934.

*E. F. Beckner*, of Colby, for the appellant.
*Leon N. Roulier*, of Colby, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action by one school district against another to recover tuition.

Appellee's petition stated two causes of action, the first to recover the tuition due for the first half of the school year commencing in September, 1932, the second to recover the tuition due for the last half of that year. Appellant's general demurrer having been over-

ruled, it elected to stand thereon, and judgment was rendered against it on both causes of action, and it appeals.

It is not disputed that tuition payable by a community high-school district was, under R. S. 72-2505, due and payable in January and June of each year. It is likewise conceded that so far as the second cause of action is concerned the demurrer was properly over-ruled. The sole question for determination is whether as to the first cause of action the claim is not barred by reason of appellee's failure to comply with the provisions of the cash-basis law (Laws 1933, ch. 319; R. S. 1933 Supp. 10-1101 *et seq.*).

It is clear from the exhibit attached to the petition that no claim for the tuition due for the first half of the school year commencing in September, 1932, was made in January, 1933, as provided by R. S. 72-2505, but was actually made on June 30, 1933, or subsequent thereto.

The cash-basis law requires all municipalities, which under sub-division (A) of section 1 includes school districts, to pay or refinance their valid indebtedness as provided in section 2 of the act, it being there stated:

"It is hereby declared that the purpose of this act is to provide for the funding and payment of all legal debts and obligations . . ."

Section 3 of the act provides for the compilation of a detailed financial statement as of April 30, 1933, and section 4 provides for the publication and posting of notices which shall contain the financial statement, and shall be followed by hearing and allowance or disallowance of claims by the governing body of the municipality, and the issuance of bonds to pay the indebtedness. The notice is required to contain a statement that any person (under section 1 defined to include corporations) claiming to be a creditor, and whose demand is not included in the financial statement, must present the same to the governing body on or before May 15, 1933. Provision for appeal is made, and the court is required to dispose of any appeals between June 1 and June 15, 1933. Section 4 concludes with this sentence:

"All claims not presented as above provided (except unliquidated claims for damages) shall be barred and shall no longer constitute a valid and existing indebtedness of the municipality."

It seems to be admitted that the appellant district complied with the cash-basis law and refunded its indebtedness and issued bonds therefor, but whether it did or not appellee district concedes that it

filed no claim for tuition due from the appellant district, and it argues that the cash-basis law has no application in barring this class of claims, and that the law was not intended to apply as between one municipality and another, or that if it does apply it unreasonably limited the period in which the claim could be presented.

In discussing the question whether the cash-basis law applies as to claims between municipal corporations, it is noted that in section 2 of the law it is stated:

"All municipalities are required to pay or refinance their valid indebtedness as in this act provided, in the manner and at the times herein set forth, and to contract no indebtedness after May 1, 1933, except as herein provided. It is hereby declared that the purpose of this act is to provide for the funding and payment of all legal debts and obligations except present bonded indebtedness of all municipalities and for the future conduct of the financial affairs of such municipality upon a cash basis."

Section 3 requires a listing of all valid claims against the municipality for which no warrant, check or other form of payment has been issued, and subdivision (G) includes all other indebtedness of such municipality not secured by bonds and not previously enumerated which were valid obligations of the municipality at the close of business on the last day of April, 1933. The claim here involved was certainly an obligation of the appellee district on April 30, 1933. An examination of the whole act shows there are no provisions excepting a municipality from a full compliance therewith. It was said in *Drum v. French*, 138 Kan. 277, 25 P. 2d 579, that the purposes to be accomplished by the cash-basis law demand a new course of business administration by municipalities, the provisions in some respects demanding a radical departure from former proceedings, and further that the act provides a rather speedy program for the payment of all outstanding indebtedness. There can be no doubt that the legislature had broad powers respecting the finances of the various municipal subdivisions of the state, and could, if it saw fit, entirely change the arrangements existing between the various subdivisions. In *Citizens Bank of Weir v. Cherokee Township*, 138 Kan. 282, 25 P. 2d 1019, it was held that the act was mandatory upon the municipality. We have no doubt that it was obligatory upon the appellee district to comply with the provisions of the cash-basis law, not only as pertains to claims against it, but also as to claims it held against other municipal corporations. If the proposition were doubtful, some effect should be given to the following actions between municipal corporations under the act: *Greenwood County*

*Comm'rs v. School District,* 139 Kan. 297, 31 P. 2d 723; *Harvey County Comm'rs v. School District,* 139 Kan. 457, 32 P. 2d 812; *Barton County Comm'rs v. Comanche Township,* 139 Kan. 500, 32 P. 2d 497; *Woodson County Comm'rs v. City of Yates Center,* 139 Kan. 519, 32 P. 2d 209; *City of Weir v. Cherokee County Comm'rs,* 140 Kan. 30, 33 P. 2d 1108. And the matter was discussed in *State, ex rel., v. Williams,* 139 Kan. 599, 32 P. 2d 481.

Appellee contends further that as between municipal corporations statutes of limitation do not apply and that the limitation imposed by the cash-basis law quoted above does not apply as between it and the appellant.

The rule as stated in *Osawatomie v. Miami County,* 78 Kan. 270, 96 Pac. 670, and referred to in *Nemaha County Comm'rs v. City of Seneca,* 138 Kan. 895, 28 P. 2d 1034, is:

"The rule that statutes of limitation do not apply to actions by the state unless a legislative intention that they shall do so is shown by express language or appears by the clearest implication also applies to subordinate political bodies, including municipal corporations, with respect to any litigation to enforce governmental rights." (Syl. ¶ 1.)

The cash-basis law in providing a limitation of time in which claims against municipalities must be established does not by express language include municipal corporations having claims against other municipal corporations, and neither does it except them. In the decisions heretofore noted there are statements of the purpose of the legislature in passing the act. The validity of the act was challenged in *State, ex rel., v. Board of Education,* 137 Kan. 451, 21 P. 2d 295, and in that opinion, after a statement of what the act was designed to accomplish, it was said:

"So a date was named—the close of business April 30, 1933—when each of the governmental units was required to take stock, as it were, of its financial status, determine its then valid existing indebtedness . . . also, to determine moneys on hand or accruing and estimate taxes which should be received by July 1, 1933. If it finds it does not have sufficient money available to pay its valid existing indebtedness it is authorized to issue bonds in an amount sufficient to pay such indebtedness. All of this is the exercise of valid legislative functions." (p. 452.)

It cannot be assumed that the legislature was not aware of the many cases of indebtedness existing between municipal corporations, some contracted in proprietary and some in governmental capacities. Neither can it be assumed that the legislature intended that indebtedness growing out of governmental functions was not included,

and that growing out of proprietary functions was included. A reading of the whole act leads to the inevitable conclusion that what was intended was to have each municipality pay up all of its indebtedness except unliquidated claims for damages, and without other exception, and that if the creditors did not present their claims within the time fixed they were barred. To construe the act in any other manner would be to say that the legislature spoke "with its tongue in its cheek." Our judgment is that the legislature, by clearest implication, meant that the limitation in which claims could be established applied not only in favor of but against municipal corporations.

Neither can it be said that the act unreasonably shortened the statute of limitations. The tuition involved was payable in January, 1933, and had appellee strictly followed the statute (R. S. 72-2505) it would have collected its money before the cash-basis law was enacted. It had from sometime in January to April 30, 1933, to prove its claim, and that was not unreasonably short.

It follows from what has been said that the trial court erred in overruling the demurrer to the first cause of action in plaintiff's petition. Its ruling on the second cause of action is approved.

The judgment of the trial court in overruling the demurrer to the first cause of action is reversed, and the cause remanded with instructions to sustain the demurrer.