No. 31,636

THE CITIZENS BANK OF WEIR, *Plaintiff,* v. CHEROKEE TOWNSHIP in Cherokee County, ARTHUR MATHIS, JOHN WRIGHT and FRANK BOWEN, as the Township Board, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE, and H. CARTER BROOKHART, as County Clerk, *Defendants.*

(25 P. 2d 1019.)

Opinion filed October 23, 1933.

*F. W. Boss* and *Marc G. Boss,* both of Columbus, for the plaintiff.

*C. E. Shouse,* county attorney, for the defendants.

The opinion of the court was delivered by

THIELE, J.:   This is an original proceeding in mandamus to compel the issuance of bonds under the cash-basis law (Laws 1933, ch. 319).

The motion for the writ of mandamus, among other allegations, shows that on July 25, 1931, The Citizens Bank of Weir recovered judgment against Cherokee township in Cherokee county in the Cherokee county district court for $9,057.50 with interest at six per cent, from which no appeal was taken; that payments were subsequently made on the judgment, and that on May 15, 1933, there remained due on the judgment the sum of $4,288 and interest from January 1, 1933; that on May 15, 1933, in accordance with the provisions of chapter 319 of the Laws of 1933, the bank filed with the governing body of Cherokee township its duly verified voucher, covering the balance due on said judgment, and was thereafter informed that the claim had been passed and allowed on May 17, 1933.   On or about September 16, 1933, the petitioner discovered that the governing body of Cherokee township had taken no steps whatever to comply with the provisions of chapter 319 of the Laws of 1933, no meetings having been held, no notices given and no resolutions passed as required by said act.   After the apportionment of tax moneys in June, the township made payment of principal and interest on said judgment on June 30, 1933, leaving a balance due of $3,533 with interest from June 30, 1933.

The petitioner further alleges that the governing body of Cherokee township, through a mistake as to its duties and obligations, concluded that compliance with the cash-basis law was discretionary with it and not mandatory; that the claim here involved was the only claim against the township, and to save trouble and expense it would not take steps to issue bonds but would continue to treat the claim as a judgment and continue its payment by levy of a tax for

such purpose, as had been done theretofore; that the governing body of Cherokee township, on June 26, 1933, met and levied a tax of three mills on the dollar, to apply on the above judgment, and on August 7, 1933, certified the levy to the defendant county clerk, who at first refused to extend said levy in any amount exceeding one mill, but later refused to extend it in any amount. Petitioner further alleges:

"Defendant Cherokee township, and the defendants Arthur Mathis, John Wright and Frank Bowen, as the governing body thereof, claim that they are willing to pay said claim if legally possible for them to do so, but claim that by reason of their failure to take the necessary steps prescribed by said L. 1933, ch. 319, within the times and in the manner therein prescribed, they are no longer legally empowered to avail themselves of the refunding provisions of said law or to issue bonds of said township for the payment of plaintiff's claim; said defendants further claim that by reason of their failure to come under and comply with such provisions of said law, plaintiff's said claim remains in full force and effect the same, and to all intents and purposes in the same status as it was before the passage of said L. 1933, ch. 319, to wit: a valid, final and enforceable judgment in favor of plaintiff and against said defendant township, to be paid by the levy of a tax for such purpose as provided by law."

There are other allegations in the motion which need not be noticed. The prayer is in the alternative—to compel issuance of bonds on the part of Cherokee township or the extension of the tax levy on the tax rolls of the county.

All parties defendant have filed entries of appearance and stipulations that the facts set forth in the motion are true and correct; that the motion may be treated as an alternative writ, and further, that in case the court finds the law governing the cause to be in favor of the plaintiff, they will abide the judgment, and in case of failure a peremptory writ may be awarded against them.

The first question presented is whether the judgment here involved is such a claim that it must have been paid or refinanced under the provisions of the cash-basis law (Laws 1933, ch. 319). Section 1 of the act defines "claim" as follows:

"(d) The word 'claim' shall be construed and held to mean any claim arising on contract express or implied, or *a claim determined by final judgment,* but shall not include claims arising from alleged tort or negligence on the part of the municipality." (Italics ours.)

Section 2 requires all municipalities to pay or refinance their indebtedness and states:

"It is hereby declared that the purpose of this act is to provide for the funding and payment of all legal debts and obligations except present bonded indebtedness of all municipalities," etc.

Section 3 requires compilation of a detailed financial statement, the classes of indebtedness being specified and itemized. Item "G" includes "amounts of all other indebtedness of such municipality not secured by bonds and not enumerated above which were valid obligations of the municipality at the close of business on the last day of April, 1933," etc. Section 4 provides for notices, for publication of financial statements, for filing of claims, for passage of bond resolutions, and requires the filing of claims as provided, and concludes:

"All claims not presented as above provided (except unliquidated claims for damages) shall be barred and shall no longer constitute a valid and existing indebtedness of the municipality."

It clearly appears that plaintiff's claim was such a claim as had to be paid or refinanced under the act.

What of the claim of the governing body of the township that action by it under the act was discretionary and not mandatory? Section 2 provides:

"All municipalities are required to pay or refinance their valid indebtedness as in this act provided, in the manner and at the times herein set forth," etc.

Section 3 requires the compiling of the financial statement. The provisions of section 4 have been referred to. Section 20 provides that any member of any governing body who knowingly violates any provision of the act shall be subject to removal from office and in addition, for violation of any provision of the act or neglect or refusal to perform any duty imposed, upon conviction shall be subject to fine of not less than $10 nor more than $1,000.

We have no difficulty in deciding that compliance with the provisions of the act is mandatory and obligatory and is not discretionary with the governing body.

Determination of the above leaves for consideration only the question that the governing body, having failed to take the requisite steps provided by the act at the time and in the manner prescribed, is no longer legally empowered to issue the bonds of the township.

The cash-basis law sets up a specific machinery to accomplish a specific purpose, namely: to put all municipalities on a cash basis by paying up all existing outstanding indebtedness as defined in the act by the issuance of bonds, the proceeds of the sale of the

bonds or the bonds themselves being used therefor. While the act itself allows some leeway for the performance of duties thereunder, limits are set in which the duties are to be performed. There is practically no discretion to be exercised by governing bodies in carrying out the provisions of the act and, in general, performance of their duties is obligatory and mandatory, and in the event of their failure to perform, mandamus is the only remedy. Neither can it be assumed in advance that the governing body, or the officers constituting it, will not perform the duties enjoined upon it or them, and it therefore follows that, unless there is a positive statement it or they will not perform, the writ would not issue prior to its or their default of duty. But if it or they do so fail to perform, the failure cannot be set up as a defense. The statute was enacted for certain definite purposes expressed in it and cannot be nullified either by the willful refusal of the governing body to perform or its misconception of its duty.

In 38 C. J. 555 it is said:

"Ordinarily it is no objection to the issuance of the writ that the time for the performance of the duty is past, since it is only in case of default in performance at this time that the writ can issue."

In *State, ex rel., v. Holcomb et al.,* 81 Kan. 879, 106 Pac. 1030, the first paragraph of the syllabus recites:

"Mandamus is an appropriate remedy to compel a county clerk to enter upon the tax rolls taxable property omitted from the assessor's returns, where such officer admits the existence and value of the property but declines to correct the assessment and enter it upon the tax rolls because of a contention that the property is not taxable and because he is in doubt as to his power in the premises."

And in the opinion it was said:

"A party cannot escape taxation by contesting the right of officers to impose a tax and keeping it in litigation beyond the time fixed by law for making the assessment. Nor is an officer justified in setting up the excuse in a mandamus proceeding that the time fixed by statute to do the act has passed, when it was his own failure to perform the duty within the statutory time which made it necessary to bring the mandamus proceeding. An officer cannot by failure to perform a duty nullify the statute imposing it nor defeat the public in compelling performance where it takes reasonably prompt action to enforce performance." (p. 882.)

In the case of *Anderson v. Haslett,* 81 Kan. 532, 106 Pac. 296, it was held that the failure of the judge of a city court to approve an appeal bond within the time required by statute could not deprive

the appellant of his rights when he had done all that was required of him to perfect his appeal. In the opinion it was said:

"This court has compelled the approval of similar bonds, even after the time for approval had expired. In *The State, ex rel. Ayres, v. Stockwell,* 7 Kan. 98, where the clerk of the district court refused to approve a good and sufficient bond in the contest of a county-seat election, he was compelled by mandamus to approve it long after the twenty days within which it should have been approved in order to perfect the proceedings had expired. Again, in *Cox v. Rich,* 24 Kan. 20, the same question was before the court. The syllabus in that case reads:

" 'Where the party appealing from the final judgment of a justice of the peace to the district court of the county where the judgment is rendered shall, within ten days from the rendition of the judgment, enter into an undertaking to the adverse party, conditioned as required by law, with good and sufficient surety, in a sum double the amount of the judgment and costs, it is the duty of the justice of the peace to file and approve the undertaking; and *held,* that the performance of this duty may be enforced by mandamus.' " (p. 534.)

In *Rosenthal v. State Board of Canvassers,* 50 Kan. 129, 32 Pac. 129, this court said:

"Where a canvassing board wrongfully neglects and refuses to canvass returns which are regular in form, as a general rule the courts may, by mandamus, compel the board to canvass and declare the result upon the face of the returns; and if a canvass has been wrongfully or improperly made, and the board has adjourned *sine die,* this court may compel it to reassemble and make a correct canvass of all the returns before it at the time of the first canvass." (p. 133.)

And as bearing upon mandamus in other election cases, see *Lewis v. Comm'rs of Marshall Co.,* 16 Kan. 102; *In re Gunn, Petitioner,* 50 Kan. 155, 32 Pac. 470; *Board of Education v. Welch,* 51 Kan. 792, 32 Pac. 654.

Under the facts of this case we have a claimant who properly filed and presented its claim and who did all that was required of it in the premises. The board, under a misapprehension of its powers and duties, made an abortive attempt to allow the claim. Under certain circumstances, were a writ to issue, it should command the township board to comply fully with the provisions of sections 3 and 4 of chapter 319 of the Laws of 1933, by doing each act therein specified, but here we have a situation in which the claimant is the sole claimant, and a claimant whose claim, by reason of having been reduced to judgment in a court of competent jurisdiction, is not open to attack by the taxpayers of the township. In this case no good purpose would be subserved by now compelling the governing

body to make publications, give notice, and pass resolutions as required by the above act. The governing body of Cherokee township has agreed that in case the court finds the law governing this cause to be in favor of the petitioner, it will abide the judgment, and in case it fails to so comply with said judgment after rendition, a peremptory writ may be awarded. Such an order would leave doubt as to just what proceedings should be had and done, and in order that no doubt may exist a peremptory writ of mandamus will issue directed to the governing body of Cherokee township in Cherokee county, that it issue its bonds bearing interest from July 1, 1933, at the rate of not more than five per cent per annum, and in an amount sufficient to pay or satisfy the claim of the petitioner of $3,533 with interest thereon at the rate of six per cent from June 30, 1933, and in the manner provided by chapter 319 of the Laws of 1933, satisfy the claim.

In view of the above, it will not be necessary to discuss the question of the validity, in whole or in part, of the attempted tax levy of three mills. The cause is dismissed as to the defendants the board of county commissioners of Cherokee county, and H. Carter Brookhart, as county clerk of Cherokee county.

HUTCHISON, J., not sitting.