Richard Payne, an Infant, by Virginia Payne, His Next Friend, and Virginia Payne, Individually, Plaintiffs-Appellees, v. Bruce C. Kingsley, Defendant-Appellant.

Gen. No. 64-123.

Second District.

May 11, 1965.

George F. Nichols, of Dixon, for appellant.

Gunner and Keller, of Dixon (William R. Gunner, of counsel), for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

Richard Payne, by Virginia Payne, his mother, as next friend, and Virginia Payne, individually, brought this action against Bruce C. Kingsley for damages alleged to have been sustained by reason of the negligence of the defendant. The jury returned a verdict in favor of Virginia Payne, as next friend of her minor son, in the sum of $9,500 for injuries sustained by him, and in favor of Virginia Payne, individually, in the sum of $2,484.30, for medical expenses which she incurred by reason of the injuries to her son.

Defendant's theory on appeal is that the verdicts were contrary to the manifest weight of the evidence as to the issues of the defendant's negligence and the

contributory negligence of both Richard Payne and his mother.

The accident took place at approximately 9:00 o'clock on the evening of July 7, 1962, at an intersection in a residential neighborhood of Dixon, at which there were neither stoplights nor signs. The night was dark, but clear, the visibility was good, and a streetlight was burning at the intersection.

Richard, who was fourteen years old at the time, was driving a motorcycle which had been purchased for him out of his own money, by his father. His cousin, then aged twelve, was riding on the seat behind him. They had been fishing, and he was taking his cousin home. The defendant, who was nineteen years of age at the time, was driving his father's car, which was in good mechanical condition. Both vehicles had their lights on.

The defendant approached the intersection from Richard Payne's right. Richard testified that as he approached the intersection he was travelling 20 to 25 miles per hour. At the intersection he came to what he called, "a rolling stop," and shifted gears. He then saw the defendant's car about three-fourths of a block away and started across the intersection. He testified that he had plenty of time to make it across the intersection. There were no other cars in the area. When he was about three-fourths of the way through the intersection, he next saw the defendant's car, shortly before its right headlight and bumper struck the back fender of the motorcycle. There is no dispute as to the place of impact or parts of the vehicles which came in contact.

The defendant testified that he approached the intersection at about 25 miles per hour and began looking to his left and right when he was between a quarter and a half of a block from the intersection. The houses somewhat obstructed his view; he could see

a little farther to his left than to his right. As he approached the intersection line, he could see about a block to his left. He testified that he looked to his left but did not see any vehicles. At no time, until just prior to the collision, did he see the motorcycle. He thought that he first saw it in about the middle of the intersection, and he was then partially in the intersection. He never saw the headlight of the motorcycle, but did see its tail light. He was not certain whether he applied his brakes.

A lady, who lived at the intersection, testified she was looking out of her kitchen window and saw the motorcycle approaching. She first saw it about a block away. As she was watching the motorcycle approach, she saw the lights from the car. She thought they were going to hit. She saw the front wheel of the motorcycle in front of the car and she ran to the door. Apparently she did not see the actual collision. When asked by defendant's counsel, "Neither one of the vehicles stopped or slowed down?" she answered, "It happened just the way I remember it." Counsel pursued this line of questioning no further. The defendant asserts the foregoing to be testimony that neither vehicle stopped nor slowed down. We find that this conclusion is only a supposition.

■■ In order for us to hold that the verdicts are aginst the manifest weight of the evidence, an opposite conclusion must be clearly evident. Deeke v. Steffke Freight Co., 50 Ill App2d 1, 5, 199 NE2d 442 (2nd Dist 1964). As to the negligence of the defendant, there was ample evidence from which the jury could find that he failed to keep a proper lookout. He testified that he continued to look to both his right and left as he approached the intersection. When he was about at the intersection, he looked to the left and could see for a block, yet at no time did he see the motorcycle. While it is undisputed that the head-

light of the motorcycle was on, he testified he saw only its tail light, and only saw that when both the car and motorcycle were in the intersection.

■ It is well settled that one may not look with an unseeing eye and be absolved of the charge of negligence by asserting that he maintained a continuous lookout, yet failed to see that which he clearly should have seen. Briske v. Village of Burnham, 379 Ill 193, 200, 39 NE2d 976 (1942); Pantlen v. Gottschalk, 21 Ill App2d 163, 170, 157 NE2d 548 (3rd Dist 1959).

■■ As to the contributory negligence of Richard Payne, the jury unquestionably could have found from the evidence that he had entered the intersection first. Such conclusion is supported not only by his testimony, substantiated by that of his cousin, but also by the testimony of the defendant that he saw only the taillight and not the headlight of the motorcycle. Whether plaintiff was justified in believing, from the speed and distance of the approaching car, that he could safely proceed through the intersection was properly for the jury to determine. The jury was properly instructed under Instruction No. 70.02 of IPI as to the right-of-way statute, section 68 of Uniform Act Regulating Traffic on Highways, (Ill Rev Stats 1963, c 95½, par 165). It was for the jury to determine under the facts whether the defendant had the right of way by virtue of his approach from the right, or whether Richard Payne had the right-of-way by virtue of the distance of the defendant's car from the intersection at the time he entered the intersection. Maxwell v. Franklin, 29 Ill App2d 33, 172 NE2d 393 (3rd Dist 1961); Wilson v. Hobrock, 344 Ill App 147, 151, 100 NE2d 412 (3rd Dist 1951).

It was within the jury's province, under the evidence, to find that Richard Payne had the right-of-way. The right headlight and bumper of defendant's

car struck the back fender of the motorcycle with force. The conclusion is inescapable, under the evidence, that defendant did not see the motorcycle until the moment of impact, and then he only saw its taillight. From such facts and the reasonable inferences drawn therefrom, the jury might reasonably decide that the motorcycle was almost through the intersection when the defendant's car was entering it. See Pantlen v. Gottschalk, 21 Ill App2d 163, 176, 157 NE2d 548 (3rd Dist 1959).

The mother, Virginia Payne, was divorced from the boy's father, who had purchased the motorcycle for the boy. Richard lived with his mother, but at the time of the accident, the mother was in Ohio, Illinois, and the boy was spending the night with his sister. It is conceded that her independent action for the damages sustained, by reason of the medical expenditures for her son, would be barred if she were guilty of proximate contributory negligence.

■■ The defendant suggests that the fact that a fourteen-year-old boy was driving a motorcycle, and that there was no evidence that his mother objected to it, or took any particular precautions concerning it, should bar her right to recover. However, the defendant has offered no authority to support this proposition, and we have found none. The law does not require that a mother keep constant watch or exercise immediate and continual supervision over her fourteen-year-old son, in order to be free from contributory negligence.

■ Whether Virginia Payne exercised the proper degree of control and authority under the circumstances, and if she did not, whether this proximately contributed to the damages complained of, is ordinarily a question of fact for the jury to determine. Ney v. Yellow Cab Co., 2 Ill2d 74, 84, 117 NE2d 74 (1954); Crutchfield v. Meyer, 414 Ill 210, 213, 111 NE2d 142

251

(1953). In making this determination, the jury must consider all of the attendant facts and circumstances, including the family relationship and station in life, the age and capacity of the minor and the nature of the danger to which the minor is exposed. 67 CJS, Parent and Child, sec 46.

██ As to the contributory negligence of the mother, we must make the same finding which we made relative to the other issues of negligence and contributory negligence, namely: that an opposite conclusion to that reached by the jury is not clearly evident nor are the jury's verdicts palpably erroneous and wholly unwarranted. Thus, we do not believe that the verdicts or judgments entered thereon are contrary to the manifest weight of the evidence. Corrado v. Bingham, 17 Ill App2d 537, 542, 150 NE2d 837 (2nd Dist 1958). In reaching this conclusion, we are not unmindful that the trial judge, who also saw and heard the witnesses and heard the arguments of counsel, denied the motion for a new trial. Wright v. Callaghan, 50 Ill App2d 157, 163, 200 NE2d 56 (1st Dist 1964).

██ In the memorandum of the trial court, which was issued in connection with the court's ruling on the post-trial motion of the defendant, the court raised the question of the extent of its power in ruling on the alternative motion for new trial. In considering such motion, the trial court may weigh the evidence for the purpose of determining whether the verdict is contrary to the weight of the evidence, and, if the court so finds, a new trial should be granted. Heideman v. Kelsey, 414 Ill 453, 466, 111 NE2d 538 (1953); Hunt v. Vermillion County Children's Home, 381 Ill 29, 34, 44 NE2d 609 (1943); Ardison v. Illinois Cent. R. Co., 249 Ill 300, 302, 94 NE 501 (1911); Lukich v. Angeli, 31 Ill App2d 20, 27, 175 NE2d 796 (1st Dist 1961); Read v. Cummings, 324 Ill App 607, 611, 59 NE2d 325 (1st Dist 1945).

We believe that the trial court properly overruled the post-trial motion. Accordingly, the verdicts and judgments entered thereon should be affirmed.

The judgments are affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.