TODD CHRISTOPHER WALLACE, by Ronald Wallace, his Father and Next Friend, Plaintiff-Appellant, *v*. NORBERT WEINRICH, Defendant-Appellee.

Fifth District    No. 79-113

Opinion filed August 14, 1980.

KARNS, J., specially concurring.

Law Offices of William W. Schooley, of Granite City (William S. Beatty, of counsel), for appellant.

Edward H. MacCabe, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff Todd Christopher Wallace, a minor, by his father and next friend, Ronald Wallace, brought this personal injury action for damages against defendant, Norbert Weinrich, in the circuit court of Madison County. The jury found defendant not negligent, and the court rendered judgment on the verdict. Plaintiff appeals, contending the verdict was against the manifest weight of the evidence and that the trial court erred in denying plaintiff's motion to amend the complaint and in refusing certain tendered instructions.

Three occurrence witnesses testified at trial, and the facts are not in dispute. The accident occurred August 3, 1971, about 8 p.m. on McArthur Street in Alton, nine days prior to Todd's second birthday. It was daylight at the time. Todd's mother was visiting her sister, Mrs. Bush, who lived next to the Weinriches in the 3600 block of McArthur Street. Todd and his older brother Mark spent most of the "pretty summer day" playing outside. McArthur Street terminates in a dead end at the end of the block where the accident occurred. It has no sidewalks or curbs, but a shallow gutter borders the paved portion of the street. A family named Snyder lived directly across McArthur from the Weinriches, and the Snyders' house fronted on Sherwood Terrace, the nearest intersecting street. The Weinriches' driveway was about 60 feet long from garage to street, and on either side of it near the street was a small shrub which served as a winter driveway marker. The Bushes' driveway is near enough to the Weinriches' driveway that a car parked between them on McArthur might hinder

access to one or the other. Photographic exhibits taken several years after the accident show a utility pole between the Bushes' drive and the Weinriches' several feet further from the street than the Weinriches' marker shrubs. In the Snyders' yard near the street and across from the utility pole stands a large conifer.

Defendant, Norbert Weinrich, testified under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) that at about 8 p.m. on the date of the occurrence he and Mrs. Weinrich left their house to run errands. Mr. Weinrich's Mustang was parked at the near edge of the street directly in front of their house. However, they used the station wagon Mrs. Weinrich usually drove, and Mr. Weinrich adjusted the mirrors and seat before backing down the driveway. He testified his view of the street was unobstructed. He backed up, as he always did, with his left hand on the steering wheel and his right hand across the back of the front bench seat looking back over his right shoulder through the station wagon's center rear window. He backed at "normal" speed with his foot on the brake because the driveway sloped toward the street. He testified that he always stops and looks both ways when the rear of the car reaches the end of the driveway and he assumed he did so that night. He saw no pedestrians or vehicles either while stopped or when he released the brake. He testified he "probably" did not even touch the accelerator. Riding the brake, he crossed the gutter while looking over his right shoulder and turned the steering wheel so that the rear of the car swung to the right toward the dead end. He heard or felt a "bump," and Mrs. Weinrich made some exclamation. He stopped the car, in his estimation, after travelling five feet or less past the unexplained bump. They left the car and found Todd lying on his stomach near the center of the street, his head toward the Snyders', a foot or so in front of the station wagon's front bumper.

Mr. Weinrich estimated the sill of the back window of the station wagon was three feet, or slightly more, above ground level. The Mustang, he said, did not obstruct his vision. He did not see Todd until after the accident. He estimated the time elapsed from the mirror adjustment to impact as about 30 seconds.

Mrs. Weinrich's testimony was consistent with her husband's. She did not see or hear any children until after the accident. She described her husband's backing speed as slow, and she remembered that he stopped on this particular occasion when the rear of the station wagon reached the end of the driveway. She thought she probably helped him look up and down the street as she usually did. After impact he stopped "immediately." Todd was lying "to the front left" of the car. Todd's mother had apparently seen or heard the accident and was on the scene almost immediately.

Mrs. Wallace, Todd's mother, testified she was looking out the Bushes' front door window at the time of the accident. A few minutes previously

she had let Todd out into the Bushes' front yard to play. When she went to the front door to call Todd and his older brother, she saw that the Weinriches' station wagon was out of the driveway and still backing at an angle to the driveway. Its wheels were not yet straight. She could not see which way either occupant was looking. She saw the top of Todd's blond head through a side window of the station wagon behind the wagon's front door. The rear bumper had already passed him and apparently he had not yet been struck. Todd was standing still, facing the Bushes', and Mrs. Wallace had no idea how he got there. She saw no other children. Seconds later she could not see him. There had been no time to shout a warning. She ran to the street where the Weinriches were getting out of their car. Todd lay near the front bumper on the driver's side of the car.

Mrs. Wallace estimated the total distance the station wagon moved while in her sight as positively less than one car length and probably less than half a length. She described Mr. Weinrich's backing speed as "normal." She did not estimate Todd's height at the time of the accident. At the time of the accident her oldest son had been in the Snyders' yard across the street. There were few fences in the area, and children were often in each other's yards. She had seen small children in the street on tricycles on other occasions. Todd was not allowed to cross the street without his brother. Todd occasionally played on a swing set at the Snyders', but he had been refused permission to do so that day because his brother Mark did not want to watch him.

Two evidence depositions were read into evidence on plaintiff's behalf. Both included extensive medical testimony regarding plaintiff's injuries, particularly his very serious head injuries. The record on appeal contains several photographic views of the accident scene, admitted into evidence at trial, which were prepared some years after the accident.

Plaintiff's complaint charged defendant with negligence in striking plaintiff with the station wagon's left front tire and fender while backing. His motion for judgment *n.o.v.* following the verdict for defendant was denied.

Plaintiff urges on appeal that the uncontradicted evidence showed defendant was negligent as a matter of law and that the judgment on the jury verdict for defendant cannot stand and must be reversed. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) We agree.

■■ In order for this court to hold that the verdict is against the manifest weight of the evidence an opposite conclusion must be clearly evident. (*Payne v. Kingsley* (1965), 59 Ill. App. 2d 245, 207 N.E.2d 177.) Because this was a neglience action plaintiff was obligated to show by a preponderance of the evidence (1) defendant owed plaintiff a duty; (2) that duty was breached by a negligent act or omission; which (3) proximately caused (4) a compensable injury. (*Rios v. Sifuentes* (1976), 38 Ill. App. 3d 128, 347

N.E.2d 337.) The first two of these requirements, proof of a duty owed plaintiff, and its breach, are at issue here. We find it apparent in the facts that there was a duty, imposed by law, owed plaintiff by the defendant and that a negligent breach of that duty was proved as a matter of law by uncontradicted testimony.

■■ As a child less than two years old, the minor plaintiff is conclusively presumed to be incapable of contributory negligence. (*Rios v. Sifuentes*; *Dix v. Buell* (1964), 54 Ill. App. 2d 80, 203 N.E.2d 290. See Illinois Pattern Jury Instructions, Civil, No. 11.03 (2d ed. 1971) (hereinafter IPI).) Accordingly, no negligence can be imputed to plaintiff for being in the street or in the path of the defendant's car.

■■ We have no difficulty finding defendant guilty of negligence as a matter of law and determining that a conclusion opposite to that reached by the jury is clearly evident. The trial court should have granted plaintiff's motion for a directed verdict as to liability. Only the conduct of the defendant is to be considered. The action of the minor plaintiff is not an ingredient. The facts admit of but two conclusions, either the defendant backed his auto into the street without looking or he looked but he did not see. We need not, and, for that matter, cannot, determine which event pertained. The defendant's testimony that he was backing while his left hand was on the wheel, his right hand across the back of the front bench seat, and that he was looking out the rear center window of the car is uncontradicted. Nevertheless, from the testimony of the three occurrence witnesses it is evident that the plaintiff was struck by the left front door or fender as the front of the car was making a sweeping turn to the left for alignment with the street. Given the very small stature of the plaintiff, it is well within the realm of possibility that as defendant was looking over his right shoulder through the rear center window he was unable to see plaintiff to his left and possibly below his line of sight out of the left windows. In this manner plaintiff could well have been in an area of the street into which the defendant did not look. The other possibility is that defendant looked but did not see. As we have stated, either eventuality must be considered conduct which, as to the infant plaintiff, is negligence as a matter of law.

We feel that the result we reach in this case is compelled by certain statutes and common law rules which indicate that the minor plaintiff was lawfully in the street when he was struck and that the defendant was guilty of negligence as a matter of law when he backed his auto into the street from his driveway, failed to see the plaintiff, and ran into him.

At common law pedestrians had the same right to the use of streets and public highways as drivers of automobiles or their vehicles. (See *Fickerle v. Seekamp* (1934), 274 Ill. App. 310; *Housley v. Noblett* (1924), 234 Ill. App. 59.) In *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 251, 68 N.E.2d 278, 281, the supreme court stated:

"The primary right to the use of streets and sidewalks of a city of the purposes of travel belongs to the public everywhere, and not to the abutting property owners alone. The general public has the paramount right to the use of the streets in all their parts, including the sidewalks thereon. That right is the right of all persons, whether abutting property owners or residents or nonresidents of the municipality, to pass over it freely and without impediment whenever they have occasion or desire to do so."

Also, this from *Zeller v. Durham* (1962), 33 Ill. App. 2d 273, 279, 179 N.E.2d 34, 37:

"It has long been the rule in this state that the driver of a vehicle on a city street is charged with a duty to exercise reasonable care in the operation of his vehicle and to have his vehicle under such control as will enable him to avoid collision with pedestrians. He is charged with notice that pedestrians may cross the street over which he is driving and it is, therefore, his duty to so drive his car as to have it under control and to keep a proper lookout ahead so as to enable him to avoid colliding with pedestrians."

Such rights of pedestrians are recognized and encoded by statute. See generally article X of the Illinois Rules of the Road (Ill. Rev. Stat. 1979, ch. 95½, pars. 11—1001 *et seq.*).

Section 1003(c) of the Illinois Rules of the Road, which we find particularly applicable in this case, provides:

"Notwithstanding the provisions of this Section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway." Ill. Rev. Stat. 1969, ch. 95½, par. 11—1003(c).

Further assurance for our conclusion is furnished by section 11—1402(a) (Ill. Rev. Stat. 1969, ch. 95½, par. 11—1402(a)), which provides in part:

"The driver of a vehicle shall not back the same unless such movement can be made with safety * * *."

It is well settled in Illinois that a motorist engaged in backing a vehicle is under an obligation to ascertain whether there is traffic behind him and to avoid a collision. (*Hicks v. Donoho* (1979), 79 Ill. App. 3d 541, 399 N.E.2d 138.) Defendant testified that area children frequently congregated across the street in the Snyder front yard. He therefore knew, or should have known, that pedestrians or children might well be in the street as he backed out of his driveway. Plaintiff's presence was proper and foreseeable. Defendant owed plaintiff an obligation to use ordinary care, which, in such circumstances, required keeping a lookout, giving a warning, and stopping

short of collision. (*Roewe v. Lombardo* (1966), 76 Ill. App. 2d 164, 221 N.E.2d 521; *Grimm v. Carallis* (1968), 99 Ill. App. 2d 404, 241 N.E.2d 637.) The operator of a motor vehicle who, under the circumstances present here, is, or should reasonably be, cognizant of the proximity of children, must exercise care to discover their presence near his vehicle and to avoid injuring them. It is ordinarily necessary to exercise greater care for the safety of young children than for adults because of the known propensity for unpredictable conduct of children. One operating a motor vehicle under those circumstances should anticipate the thoughtlessness and impulsiveness of children. Their presence or probable presence is in itself a warning. *Stowers v. Carp* (1961), 29 Ill. App. 2d 52, 172 N.E.2d 370.

Defendant is not excused from his duty to plaintiff merely upon his uncontradicted testimony that he looked behind him while backing, but saw nothing. As recently stated by this court in *Hicks v. Donoho*:

> " 'It is equally well established by the law in Illinois, that one cannot look with unseeing eye and not see the danger which he could have seen by the proper exercise of his sight, or stated another way, one will be deemed to have observed that which would necessarily have been seen if he had looked, and will not be absolved of the charge of negligence in failing to look by testimony that he looked and did not see. [Citations.]' " (79 Ill. App. 3d 541, 544, 399 N.E.2d 138, 140.)

See also *Payne v. Kingsley.*

We agree with plaintiff that this is not a "child dartout" case, an emergency thrust upon the driver too suddenly to avoid. Here, all occurrence witnesses agree defendant's vehicle was travelling at a low rate of speed and that he was able to stop almost immediately. Defendant's speed was such that he could have stopped short of the plaintiff had he seen him at any time prior to impact. Thus the fact that plaintiff's location prior to impact was unknown is irrelevant, for defendant owed him a duty to maintain a continuous lookout. Even assuming plaintiff ran into the street from behind some obstacle the result must be the same because defendant could have avoided plaintiff by keeping a proper lookout.

The court in *Chapman v. Ewing* (1933), 46 Wyo. 130, 24 P.2d 687, addressed a very similar fact situation. Plaintiff there was injured by the right front wheel of defendant's car as defendant backed out of parking position and turned his steering wheel left while maintaining a lookout to the rear. The *Chapman* court reasoned:

> "[Defendant] did not look in the direction in which his car was moving. A single glance to the right before he turned his front wheels would have given him the plaintiff's position and afforded him opportunity to protect her, as he states his car was moving very slowly." (46 Wyo. 130, 24 P.2d 687, 688.)

The *Chapman* court stated further upon denial of rehearing:

> "[Plaintiff in error argues that he] would of necessity have had to be looking in the opposite direction from which he was going to have discovered the presence of the Defendant in Error. But this contention overlooks the fact manifest from the record that plaintiff in error was not only backing his car, but he was at the same time, through his cramping the front wheels thereof, swinging the vehicle to his right. In other words, he was moving not only backwards, but laterally at the same time. He looked in one direction, i.e., to the rear, but he did not look laterally as he should have done. His failure so to look caused the accident." 46 Wyo. 141, 25 P. 2d 1019.

As an alternative to his request that we reverse the trial court's refusal to enter judgment *n.o.v.*, plaintiff asks that we reverse and remand for a new trial. Since we have reversed the refusal to grant judgment *n.o.v.* there is no need for a new trial on the issue of liability. However, we deem it proper to discuss asserted trial errors inasmuch as they have some bearing upon our decision to enter judgment *n.o.v.* In reaching our decision we assumed the applicability of section 1205 of the Rules of the Road. At trial the court ruled that section inapplicable, and upon appeal the defendant strenuously argues the correctness of the trial court's ruling. The issue should be addressed.

At the close of his case in chief plaintiff moved to amend his complaint to allege that defendant "[f]ailed to yield the right-of-way to the pedestrian Plaintiff * * * when emerging from a private driveway in violation of Section 11—1205 of the Rules of the Road of the Laws of the State of Illinois (Ill. Rev. Stat. 1969, Section 95½, Section 11—1205)." Section 11—1205 of the Illinois Rules of the Road reads in pertinent part:

> "The driver of a vehicle emerging from an alley, building, private road or driveway shall stop such vehicle immediately prior to driving into the sidewalk area * * *, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon, and shall yield the right-of-way to any pedestrian as may be necessary to avoid collision * * *." (Ill. Rev. Stat. 1969, ch. 95½, par. 11—1205.)

The trial court ruled that section 11—1205 of the Illinois Rules of the Road did not apply "where the child was found in the middle or approximately in the middle of the street" and in so doing compared section 11—1205 of the Illinois Rules of the Road with section 11—1003(a) of the Illinois Rules of the Road, which states:

> "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." Ill. Rev. Stat. 1969, ch. 95½, par. 11—1003(a).

Section 46(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46 (3)) reads as follows:

> "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuances that may be just."

In order to promote the spirit of the Civil Practice Act, the power to allow amendments should be freely exercised so that litigants may fully present their causes of action. (*Schlossberg v. E. L. Trendel & Associates, Inc.* (1978), 63 Ill. App. 3d 939, 380 N.E.2d 950.) The most important question is whether the amendment will be in furtherance of justice. *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164.

Defendant urges that section 1205 of the Rules of the Road was inapplicable to this case because it was clear that defendant maintained a constant lookout and stopped before entering the street and that plaintiff was not visible to defendant at any time. He argues further that section 1205 of the Rules of the Road does not apply where plaintiff was not in the "sidewalk area." We disagree. Section 1205 sets forth no requirement that pedestrians be in the sidewalk area to fall under its protection; rather, it states the driver "shall yield" to "any pedestrian as may be necessary to avoid collision." The section refers to the "sidewalk area" only as the point at which the driver must stop prior to entering the street. Moreover, it was not "clear" that defendant could not have seen plaintiff had defendant kept a proper lookout. If defendant looked but did not see that which he should have seen, he is in no better position than if he had not looked. (*Hicks v. Donoho.*) Furthermore, we find the trial court's reliance on section 1003(a) of the Rules of the Road inappropriate since it was undisputed that defendant's vehicle was not "upon the roadway" but, rather, was entering the roadway and thus was required to yield the right-of-way to plaintiff and any other pedestrians thereon. No fault could be imputed to the two-year-old plaintiff for failure to keep to the "sidewalk area" since, as even defendant notes, contributory negligence was not in issue.

Section 11—1205 of the Illinois Rules of the Road is clearly a statute "'designed for the protection of human life or property.' " (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390, 356 N.E.2d 93.) As such, violation thereof is prima facie evidence of negligence. *Davis.*

■■ We conclude that section 1205 of the Illinois Rules of the Road was applicable to the instant facts and of great importance to plaintiff's theory of the case. In the interest of permitting full presentation of that case, the trial court should have permitted the amendment. In our opinion plaintiff was substantially harmed by the trial court's refusal to do so.

■■ The last issue raised by plaintiff is that the trial court erred in refusing two of plaintiff's tendered jury instructions. The first, Plaintiff's Instruction No. 13, was given as modified to delete the same phrase the trial court

refused to add to the complaint by amendment. The second recited section 1205 of the Rules of the Road with minor deletions and would have instructed the jury that if defendant had violated that section, such violation might be considered in reaching a verdict. Thus the effect of the trial court's refusal of the two instructions was to prevent the jury from considering section 1205. A party has a right to have the jury instructed on his theory of recovery or defense if that theory is supported by facts in evidence or by reasonable inference from facts in evidence. (*Smith v. Ford* (1976), 43 Ill. App. 3d 407, 356 N.E.2d 1306.) Instructions concerning violation of a statute should not be given unless the evidence is adequate to support a finding that a violation actually occurred. (*Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624; IPI Civil No. 60.00.) Our reasons why section 1205 of the Rules of the Road was appropriately raised by plaintiff have been set forth above. We are of the opinion that the instructions incorporating section 1205 should have been given.

The judgment of the circuit court of Madison County is reversed, judgment for the plaintiff as to liability is entered here, *n.o.v.*, and this cause is remanded for a new trial as to damages only.

Reversed and remanded.

KASSERMAN, J., concurs.

Mr. JUSTICE KARNS, specially concurring:

While I concur in the decision reached by the majority, I do not agree with that part of the opinion which finds section 11—1205 of the Illinois Rules of the Road (Ill. Rev. Stat. 1969, ch. 95½, par. 11—1205) applicable to the facts of this case. In my opinion, the purpose of section 11—1205 of the Code is to protect pedestrians walking on a sidewalk, or walking in the area where a sidewalk would be in the event there is no sidewalk. It is not to protect pedestrians walking in a street. The uncontroverted evidence was that the child was in the street, not in the sidewalk area; therefore, the statute is not applicable. Furthermore, the uncontroverted evidence was that the defendant did stop and look before proceeding into the street, thereby obeying the command of the statute. The statute could, therefore, not apply even if arguably applicable to these facts.