J.R. SINNOTT CARPENTRY, INC., Plaintiff and Counterdefendant-Appellant, *v.* JAMES E. PHILLIPS *et al.*, Defendants and Counterplaintiffs-Appellees.

Fourth District   No. 4—82—0280

Opinion filed November 18, 1982.

WEBBER, J., specially concurring.

John T. Phipps, of John T. Phipps Law Offices, P.C., of Champaign, for appellant.

Arnold E. Blockman, of Hatch, Blockman & McPheters, of Champaign, for appellees.

JUSTICE LEWIS delivered the opinion of the court:

Roger Sinnott, on behalf of the plaintiff corporation J.R. Sinnott Carpentry, Inc., entered into a contract with defendants, James and Susan Phillips, for the construction of an addition to defendants' house in Urbana, Illinois. Plaintiff brought this suit to recover a sum allegedly due under the contract. Defendants' counterclaim alleged that (1) plaintiff breached the contract; (2) plaintiff was negligent in the construction of the addition; and (3) plaintiff breached a written warranty against defects and negligence.

The contract provided that defendants were to pay for all labor at the rate of $12.95 per hour, payable monthly, and to pay for all material at plaintiff's cost payable on the first day of each month. The contract provided that work was to be performed "in accordance with the plans and specifications attached hereto." However, no plans or specifications were attached to the contract. James Phillips testified that he did not want Sinnott "feeling trapped into a fixed type contract" and that they wanted Sinnott to have enough latitude to build what defendants wanted. Sinnott testified that he had made floor plans from sketches made by Susan Phillips and that defendants indicated they did not need any more detailed plans or specifications than what they had. Susan Phillips testified that she asked Sinnott if they would need an architect and he said it would not be necessary because he had enough plans to go ahead and build the addition.

Susan Phillips' sketches depicted floor plans for the addition. Susan testified that the sketches represented three livable floors and that the third floor was to have two rooms, a play room and a sewing room, and that there were to be dormer windows on the third floor. Sinnott made blueprints from the sketches and subsequently had a second set of blueprints made by Thompson Lumber Company.

The Thompson Lumber Company blueprints indicated dormer windows on the third floor. There was also a door on the third floor which was marked as six feet eight inches high and a wall which divided the third floor into two distinct areas. Sinnott testified that he represented to defendants he could build the structure shown in the Thompson Lumber Company blueprints. He also testified that he always believed he was going to build two floors with a storage attic and never envisioned a three-story project. He thought the third floor was for storage and possibly a play room.

Susan Phillips testified that she specifically told plaintiff that she wanted a third floor which was to consist of a play room and a sewing room and was to have dormer windows. James Phillips testified that before the contract was entered into he told Sinnott that they wanted three floors with livable space.

Defendants' expert, Richard Willms, a general contractor, testified that Sinnott's blueprints and the Thompson Lumber Company blueprints called for three stories of habitable space with dormer windows. The basis for his belief that three stories were called for was the six-foot eight-inch door on the third floor shown in the Thompson Lumber Company blueprints. He said defendants' addition was not in accordance with the plans because it did not have dormer windows or a third floor. He said the structure could not be repaired without tearing it down. He also testified that it is customary to provide vertical section drawings which give floor elevation and headroom and without such drawings one cannot tell whether the structure can be built.

Henry Spies, a staff member of the Small Homes Council and Building Research Council at the University of Illinois, testified in an evidentiary deposition that the plans called for three floors of habitable space and dormer windows and that the building was not in accordance with the plans. Spies testified that it was customary to provide section plans and that a competent contractor should have realized that a building could not have been built according to the Thompson Lumber Company blueprints.

Susan Phillips testified that she was not aware of a problem with the height of the third floor until the roof was put on the addition and the side of the house adjacent to the addition was broken into. She

said she did not go up to the third floor earlier because it was only accessible by a ladder which she did not want to climb because she was "carrying around" a small baby. She testified that the height of the third floor is about five feet six inches in the center. A photograph of the attic shows exposed wooden rafters that slope downward from the center of the attic. Susan further testified that, after she discovered the low ceiling on the third floor, she told Sinnott there was no reason to install dormer windows on the third floor. She testified that Sinnott never told her there would not be three floors of habitable space.

At trial, defendants introduced evidence relating to alleged defects in material and workmanship. Susan Phillips testified that she wanted one-inch by eight-inch tongue-and-groove pine flooring. She said plaintiff installed tongue-and-groove flooring on the second floor, but installed common pine on the first floor. She testified that the boards on the first floor were pulling apart and splitting. Defendants also presented evidence of the following defects: a stairwell with insufficient headroom; a leak in the vestibule resulting from improper flanging on the roof; a stairway with a bottom step 10 inches high and all other steps six inches high; the walls of the building were only four inches thick, whereas defendants had asked for six-inch walls; one of the windows on the first floor was not thermopane although defendants had requested that all windows be thermopane; and a problem with the threshold where the second floor of the addition met the second floor of the house.

Campbell Evans, a real estate appraiser, testified that the replacement cost of an addition similar to what defendants have now would be $73,246 and the fair market value of such an addition would be $43,948.80. He testified that the replacement cost of a three-floor addition would be $122,850 and the addition would have a fair market value of $73,710. Evans' figures for replacement costs were derived by multiplying the square footage of habitable floors by $60 per square foot. The figures for market values were obtained by multiplying the replacement cost by 0.6.

James Phillips testified that plaintiff originally estimated the cost of the project to be $40,000. Defendants have paid to plaintiff $84,216.63 under the contract.

Sinnott testified at trial that $17,455.91 was due under the contract for labor and materials. Defendants responded that they were billed twice in the amount of $1,233.31 for work done by a subcontractor. Defendants also disputed other charges but conceded that their balance was $14,543.47.

The trial court found that the contract provided for three floors of habitable space; that this provision was an essential part of the contract; and that plaintiff failed to substantially perform the contract by not building three floors of habitable space. Accordingly, the court held that plaintiff could not recover under the contract. The court also determined that, although plaintiff breached the contract and was negligent in failing to provide section drawings, defendants suffered no ascertainable economic loss other than the cost of repairing the defects in material and workmanship. Finally, the trial court found that defendants had been damaged by plaintiff's negligence in disconnecting an electric freezer which caused the loss of meat inside the freezer. The trial court awarded defendants $9,101.36 as the cost of repairing defects and $250 as damages resulting from plaintiff's negligence.

## I

Plaintiff maintains that certain parts of the trial court's judgment were against the manifest weight of the evidence. For a judgment to be against the manifest weight of the evidence it must appear that the conclusions opposite to those reached by the trier of fact are clearly evident. *Joray Mason Contractors, Inc. v. Four J's Construction Corp.* (1978), 61 Ill. App. 3d 410, 378 N.E.2d 328.

■ First, plaintiff argues that the trial court's finding that the contract called for plaintiff to build a three-story addition was against the manifest weight of the evidence.

Susan Phillips testified that she specifically told plaintiff that she wanted "[a] three-story addition with livable space on all three floors" with dormer windows and that the third floor was to be a play room and a sewing room. James Phillips testified that he told plaintiff he wanted three floors of livable space. The Thompson Lumber Company blueprints procured by plaintiff indicate that the third floor was to have dormer windows, a dividing wall, and a door six feet eight inches high. The dormer windows, the wall, and the height of the door indicate that the third floor was to be used for something other than storage. Defendants' two experts testified that the plans indicated three floors of habitable space. Finally, Sinnott even testified that he thought the third floor was to be for storage *and a play room.*

Plaintiff's only evidence indicating that the addition was not to be for three floors of habitable space was Sinnott's testimony that the contract was for a two-story addition with an attic and that he never envisioned a three-story project. Plaintiff also noted that the blue-

prints and Susan Phillips' sketches labeled the third floor plans as "attic plans." However, the word "attic" does not necessarily mean a space only usable for storage. Furthermore, we reiterate, that the Thompson Lumber Company blueprints, drawn pursuant to Roger Sinnott's directions, indicate a dividing wall and a six-foot eight-inch door on the third floor. This suggests that Sinnott, at one time, envisioned something other than what he built.

Plaintiff's conclusion that the parties contracted for only two floors and a storage attic is not clearly evident. Therefore, we hold that the trial court's finding that the contract required three habitable floors was not against the manifest weight of the evidence.

■■■ Second, plaintiff argues that the trial court's finding that plaintiff failed to substantially perform the contract was against the manifest weight of the evidence. The general rule is that a builder is not required to perform perfectly, but rather is held only to a duty of substantial performance in a workmanlike manner. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 356 N.E.2d 565; *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270.) The question of whether substantial performance has been given depends on the facts of each case. (*Joray; Brewer.*) In *Watson Lumber Co. v. Mouser* (1975), 30 Ill. App. 3d 100, 333 N.E.2d 19, the court stated that the "pristine qualities" of the doctrine of substantial performance were substantial performance of the work required by the contract and a good faith performance of the essential points of the contract. In the present case, the trial court found that the requirement of three habitable floors was an "essential point" of the contract and, consequently, plaintiff failed to substantially perform the contract by not building a third habitable floor.

Defendants' expert witness, Campbell Evans, testified that the fair market value of a three-story addition was $73,710 whereas the fair market value of an addition similar to what plaintiff built would be $43,948. This evidence shows that there is a substantial difference between what defendants contracted for and what they received. Plaintiff presented no evidence to rebut Evans' testimony. Furthermore, plaintiff made no argument to the trial court or to this court that the addition it built was in substantial performance of a contract which required three habitable floors.

The trial court's conclusion that plaintiff failed to substantially perform the contract by not building three habitable floors was not against the manifest weight of the evidence.

Finally, plaintiff argues that the finding of negligence on its part was not supported by the record. The trial court awarded $250 to

defendants for the loss of meat resulting from plaintiff's alleged negligence in disconnecting electricity to a freezer. Defendants do not address the issue of whether the trial court's finding of plaintiff's negligence involving the disconnection of the freezer was against the manifest weight of the evidence and, therefore, have waived the issue. See Supreme Court Rule 341(e)(7), (f) (87 Ill. 2d R. 341(e)(7), (f)).

Even absent defendants' waiver, the evidence does not support the trial court's finding that plaintiff was negligent. The only evidence concerning the disconnected freezer was testimony by James Phillips. He said one of the workmen disconnected the freezer but he did not know whether the workman was employed by plaintiff or a subcontractor. An employer is generally not liable for the acts of an independent contractor. (*Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 642.) Consequently, although the evidence showed that plaintiff might have been negligent, the evidence was equally compatible with the fact that someone other than plaintiff was negligent. Defendants were required to show by a preponderance of the evidence that plaintiff breached a duty owed to defendants by a negligent act. (See *Wallace v. Weinrich* (1980), 87 Ill. App. 3d 868, 409 N.E.2d 336.) Defendants failed to sustain this burden of proof.

The portions of the judgment finding plaintiff negligent in disconnecting the freezer and awarding defendants $250 as a result of that negligence are vacated.

## II

■■ ■ Plaintiff argues that the trial court's award of damages was improper. In *Brewer,* the trial court stated that a contractor whose work amounts to less than substantial performance has no right to the contract price. In such a case, the builder's right is under a theory of *quantum meruit* and he is entitled to recover only reasonable compensation for value received by the purchaser over and above the injuries suffered by the builder's breach. In the present case, the only testimony of the value of the addition was defendants' expert who testified that the fair market value of an addition similar to what plaintiff built was $43,948. It was undisputed that defendants have paid plaintiff $84,216.63. Consequently, plaintiff has received compensation far in excess of the value received by defendants and, therefore, has no damages under a *quantum meruit* theory.

The court in *Brewer* also stated that "[a]s a general rule, the measure of damages, or the credit due the purchaser, when performance by the builder has been less than full performance, is the cost of correcting the defects ***." (42 Ill. App. 3d 668, 674, 356 N.E.2d 565,

570.) The trial court awarded damages to defendants based on the cost of repairing defects in material and workmanship. The award was calculated as follows:

| | |
|---|---:|
| 1. Stairway between second and third levels | $2,250.00 |
| 2. Second level threshold | 64.60 |
| 3. First level flooring | 6,304.26 |
| 4. First level non-thermopane window | 102.00 |
| 5. Vestibule roof leak | 380.50 |
| TOTAL | $9,101.36 |

Defendants were entitled, at least, to the cost of repairing these defects. Furthermore, plaintiff has not challenged this part of the judgment on appeal. We find no cause for reversal of the trial court's judgment with respect to the foregoing damages.

### III

Plaintiff argues that in awarding damages to defendants, the trial court erred because defendants' failure to pay an installment was a material breach of the contract which barred any recovery. Plaintiff did not raise this issue in the trial court. Matters not presented to or ruled upon by the trial court may not be argued as error on appeal. (*Gentile v. Gentile* (1980), 87 Ill. App. 3d 311, 409 N.E.2d 52; *McCoy v. Board of Fire & Police Commissioners* (1979), 79 Ill. App. 3d 742, 398 N.E.2d 1020.) Consequently, plaintiff has waived this issue.

Even if plaintiff did not waive the issue, the court in *Brewer* stated that the purchasers' refusal to pay is not a breach of contract when the builder's work amounts to less than substantial performance. Therefore, as a result of plaintiff's failure to substantially perform the contract, defendants' failure to pay the installment was not a breach of the contract and they were entitled to recover the cost of repair for defects.

### IV

Plaintiff, citing *Brewer*, argues that it is entitled to recover on the contract because defendants "accepted" plaintiff's less than substantial performance. In *Brewer*, the court determined that, as a result of numerous defects, the builder breached his contractual duty to perform the work in the "best workmanlike manner." The court found the builder's performance to be less than substantial, but never-

theless, allowed him to recover on the contract because the purchaser's "activities in correcting many of the claimed defects and in proposing to correct many others, amount[ed] to acceptance and use of the structure of such a character as to recognize that [the builder's] performance [was] substantial." 42 Ill. App. 3d 668, 674, 356 N.E.2d 565, 571.

■ *Brewer* is distinguishable from the present case. Here, plaintiff's less than substantial performance was a result of his failure to perform an essential part of the contract rather than merely a result of numerous defects. Furthermore, defendants have made no attempt to correct the "defect" of the lack of a third floor. On the facts of this case, there was no "acceptance" by defendants that would permit plaintiff to recover under the contract.

The trial court's judgment is affirmed except for the finding that plaintiff was negligent in disconnecting defendants' freezer and the award to defendants of $250 for damage resulting from that negligence. The judgment is to be modified to conform with this opinion.

Affirmed in part, vacated in part and remanded.

LONDRIGAN, J., concurs.

JUSTICE WEBBER, specially concurring:
Although I agree with the result reached by my brothers, I respectfully disagree with the theory upon which they reached it. The principal opinion speaks in various places of "substantial performance" and "substantial breach." These are concepts which relate to a contract which is sufficiently definite and certain as to be susceptible of specific performance. No such contract exists here. It is even questionable whether a contract exists at all in this case as the evidence showed no manifestation of mutual assent. The only sound theory upon which the trial court's judgment can be affirmed is that of *quantum meruit.*

A contract must be clear, definite, and complete in all of its material terms to be enforceable. Although a lack of nonessential details will not render a contract unenforceable, a contract will only be deemed to be sufficiently definite and certain if a court is able to determine, from its terms, what the parties have agreed to do. (*First National Bank v. Minke* (1981), 99 Ill. App. 3d 10, 425 N.E.2d 11.) In the case at bar the contract in no way provides what the parties have agreed to do. The agreement signed by the parties specified that the addition was to be constructed pursuant to plans and specifications

which were to be attached to the contract. No such plans or specifications were ever attached, although blueprints were obtained from sketches made by defendant Susan Phillips. The parties apparently reviewed these blueprints prior to beginning construction of the addition. However, it is obvious from the evidence that the blueprints were drafted in such a manner as to be susceptible to at least two conflicting interpretations, *i.e.*, that the blueprints called for an addition of two stories, or that they called for an addition of three stories. Consequently, the contract was uncertain as to its very subject matter; a contract must be reasonably certain as to its subject matter. (17 Am. Jur. 2d *Contracts* sec. 81 (1964).) This uncertainty of the subject matter extends to the price and time terms. Without knowing whether a two-story or a three-story addition was to be constructed, the parties could not have known the ultimate price with any definiteness or the time in which the project was to be completed.

The record reveals that the parties referred to the third story variously as an "attic," a "playroom," and a "sewing room." Only a necromancer could say what they had in mind individually, and certainly there is no evidence of agreement upon any one of these terms, or any other term, for this third story. Yet, the trial court and the majority seize upon a six-foot eight-inch door, obviously a minor item in an $80,000 project, as conclusive evidence of intent.

For the same reasons it is questionable whether a contract existed between the parties at all. One of the essential elements for formation of a contract is manifestation of agreement or mutual assent by the parties to the terms thereof. The failure to agree upon an essential term may indicate that mutual assent is lacking. *Allen v. Amber Manor Apartments Partnership* (1981), 95 Ill. App. 3d 541, 420 N.E.2d 440.

The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. (Restatement (Second) of Contracts sec. 33(2) (1981).) The document which purports to be the contract between the parties in the case at bar is so uncertain that it is not capable of specific performance. Specific performance will not be granted unless the terms of a contract are sufficiently certain to provide a basis for an appropriate order. (Restatement (Second) of Contracts sec. 362 (1981).) Without knowing what plaintiff was to construct, a court could not order him to specifically perform. Further, the agreement is not susceptible to an order of damages in the event of breach. Again, without knowing what it was that plaintiff was to do, there would be no way of determining damages in the event of his breach. Moreover,

without knowing what it was plaintiff was to do there is no way of knowing the ultimate price defendants were to pay and therefore no way of assessing damages in the event of their breach.

Likewise, without knowing what it was that plaintiff was to do, there is no way to determine whether there has been substantial performance. A court's primary object in construing a contract is to give effect to the intentions of the parties. (*First National Bank.*) It is not necessary that a party perform perfectly. (*Brewer.*) However, where, as here, the contract is so uncertain as to be unenforceable the intentions of the parties are not discernible and it becomes impossible to define substantial performance.

Since the contract is not clear, definite, and complete in all of its material terms it is not enforceable. (*First National Bank.*) Moreover, as has been indicated above, it is questionable that a contract even existed between the parties. Consequently recovery may only be had under the doctrine of *quantum meruit*. In this regard the evidence at trial is of little assistance. The evidence of cost and value is at best suspect. The value of the addition was viewed in isolation, rather than being viewed in relation to the increased value of the entire existing structure by virtue of the addition. Nevertheless, the evidence of the cost of the existing addition and a three-story addition is unrefuted. Therefore the trial court and the court on review are limited to ruling based on that evidence. Further, the evidence of repairs is uncontested.

Under the doctrine of *quantum meruit* a quasi-contract, or a contract implied in law, is not based on the apparent intentions of the parties but is an obligation created by law for reasons of justice. (Restatement (Second) of Contracts sec. 4, Comment *b* (1981).) In order to be successful upon a contract implied in law the plaintiff must prove the performance of services, the reasonable value of those services, and the receipt by the defendant from the plaintiff of a benefit which it would be unjust for him to retain without paying the plaintiff. A contract implied in law, which is equitable in nature, exists only where there is a plain duty and a consideration. *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.* (1977), 51 Ill. App. 3d 11, 365 N.E.2d 316.

In the instant case the plaintiff has proved performance of services. The only evidence of value is the suspect cost evidence that what defendants have now would cost $73,246 to replace. Finally, it is obvious that it would be unfair to allow defendants to retain the benefit conferred on them by plaintiff without paying therefor. The addition constitutes the consideration on the part of plaintiff and results in a

643

duty on the part of the defendants to pay for the addition.

Defendants have paid plaintiff $84,216. Plaintiff conceded that there were approximately $9,000 worth of defects in construction which needed repair. Consequently, after performing the repairs, or paying defendants to have them done, plaintiff would receive approximately $75,000. *Quantum meruit* means literally that which he deserves. (Black's Law Dictionary 1408 (4th ed. 1968).) Since the only evidence of the cost of building the addition as it now exists was approximately $73,000 and plaintiff after the cost of repairing defects will have received approximately $75,000, he has received no more than that which he deserves based on the evidence.

For the foregoing reasons I would affirm the judgment of the circuit court of Champaign County, but only on a *quantum meruit* basis. If the evidence of value were to reveal that the addition has enhanced the entire property more than $73,000 (as may be suspected), I would reverse.