MARY FIGARELLI, Individually and as Adm'r of the Estate of Michelle Figarelli, Deceased, Plaintiff-Appellee, *v.* SANDRA LEE IHDE, *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 59554, 59559, 59986 cons.

Opinion filed May 14, 1976.—Modified upon denial of rehearing July 23, 1976.

Joseph B. Lederleitner, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago, for appellants.

Philip H. Corboy, of Chicago (William J. Harte and Paul B. Episcope, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This action was brought to recover damages for a death and for family expenses sustained as the result of an accident in which a vehicle driven by Sandra Lee Ihde struck and killed five-year old Michelle Figarelli as she proceeded into the street from in front of a parked Good Humor Ice-Cream truck.

Actions were brought in negligence against Ihde and Good Humor. An additional count was brought against Good Humor on the ground of alleged wilful and wanton misconduct, upon which the jury returned a finding of not guilty. A counterclaim was brought by Good Humor against Ihde for indemnification; the trial court directed a verdict in favor of counterdefendants.[1] The jury returned verdicts of $56,000 against both defendants, which were reduced by the trial court to $31,704.78 in accordance with the statutory limit then in effect.

On August 19, 1966, at about 1 o'clock in the afternoon, an ice-cream truck owned by the Good Humor Corporation and operated by its employee, Kazuo Kajimura, parked parallel facing south alongside the curb of Maple Avenue, a one-way, four-lane street in Berwyn, Illinois. There is a playground-park on the right side of the street where the truck had parked, and homes opposite thereto.

Linda Bavone testified that she was at the park on the day in question and observed approximately 20 children from the park and the general area standing around the ice-cream truck. Several children climbed on the truck and rang its bells without interference by the driver who stood at the rear selling ice cream. Bavone testified that she observed the decedent along with a friend, Vicki Paganelli, at the rear of the truck looking at pictures of the ice cream bars and their prices. Bavone said that Vicki and decedent then ran along the side of the truck on the curb side toward the front of the truck, each stepping off the curb into the street. She stated that Vicki was in the middle of the street when the decedent left the curb, and that the decedent was about half way across the street when she was struck by Ihde's car. Bavone said that she had never heard the Good Humor driver warn the children who had gathered around the truck about any traffic hazards, nor did she ever see him look to his rear or to his left for approaching traffic. Upon direct examination by plaintiff's counsel, Bavone testified that she did not observe any lights flashing on the truck as she sat behind it on her bicycle. The witness testified that the car driven by Ihde had been proceeding down the street at a speed which evidenced no consideration for the fact that an ice-cream truck was present. She had heard the screeching sound of the brakes and observed

---

[1] There is no written order directing a verdict. In Good Humor's brief the disposition of the counterclaim is labeled as a "dismissal."

that Ihde's vehicle was now halted about seven houses down from where the Good Humor truck was parked.

Vicki Paganelli testified that she had been playing with decedent before the occurrence and that when she heard the bells she ran across the street to the ice-cream truck. In response to questioning by plaintiff's counsel she stated that she did not notice any flashing lights on the truck as she stood at the rear purchasing ice cream. After she had purchased her ice cream and crossed the street to return to her home she heard the sound of the brakes from the area directly behind her. She looked toward the disturbance and saw decedent lying in the middle of the street in front of the Ihde vehicle.

William Signore, who had bought ice cream for his own children, testified that he had seen decedent and Vicki Paganelli around the ice-cream truck immediately before the occurrence. He did not observe the driver of the ice-cream truck do anything to control the crowd of children around the truck. He also testified that he did not see any flashing lights at the rear of the truck.

Berwyn Police Officer William Koop testified that when he arrived at the scene he found decedent lying in the middle of the street in front of Mrs. Ihde's Pontiac. He measured the distance as 93 feet from the front of the Good Humor ice-cream truck. On cross-examination the officer testified that he examined the brakes and they were in good order. On redirect examination Officer Koop stated that he did not notice whether the ice-cream truck had any flashing amber lights.

Sandra Lee Ihde was ruled incompetent under the Dead Man's Act and was precluded from testifying.

Kazuo Kajimura testified that he began to ring the bells on his ice-cream truck as he approached the park in order to get the attention of the children in the area. He stated that he does not recall there having been any other cars parked along the curb behind the truck on Maple Avenue. The speed of the passing Ihde vehicle was not slow, he said, although it did not travel with any exceptional speed either. He testified that he made no effort at the particular location to slow down or stop traffic either through the use of his hands or his truck, or in any other way.

■■ ■ Defendant Good Humor contends that the trial court committed reversible error in submitting instruction No. 24 to the jury. This instruction, which incorporated portions of section 113 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1965, ch. 95½, par. 210), read:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> 'Flashing lights are prohibited on motor vehicles except as a

means for indicating the presence of a vehicular hazard requiring unusual care in approaching, overtaking or passing.'

If you decide that a party violated the statute on the occasion in question then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence."

This instruction was tendered by plaintiff's counsel with the intention that the jury, in determining whether defendant violated the statute, consider only the exception to the prohibition which permitted the use of flashing lights under certain circumstances, rather than consider a violation of the prohibition itself. This purpose was clearly evidenced by the fact that plaintiff's counsel extracted testimony from almost every witness to the effect that the ice-cream truck was not equipped with flashing lights, and then argued to the jury in his closing remarks that defendant may by law use flashing lights to warn of a vehicular traffic hazard. Thus, in essence, the jury was instructed that they may decide that defendant violated a duty to activate his flashing lights, an act which in itself was only discretionary. It is elementary that one cannot violate a duty which one is not required to exercise. It follows that "instructions concerning violations of a statute or ordinance should not be given unless the evidence is adequate to support a violation." (IPI Civil 60.00, at 234, citing *McAtee v. Mantzoros,* 340 Ill. App. 216, 91 N.E.2d 138; *Moss v. Wingo,* 47 Ill. App. 2d 138, 197 N.E.2d 848.) Since the statutory language does not *mandate* the driver of a vehicle to activate his flashing lights so as to indicate the presence of a vehicular traffic hazard we find that it was reversible error for the trial court to permit extensive examination and specific argument as to the absence of flashing lights on the truck and to submit an instruction which permitted the jury to consider a failure to utilize this warning device as a violation of the statute. We must therefore, with respect to defendant, Good Humor, reverse and remand for a new trial. Moreover, since we remand for a new trial to determine factually whether Good Humor was or was not negligent, it is also necessary that there be a trial on Good Humor's counterclaim which alleges that its negligence, if any, was passive. Since the trial court considered the statute and ordinance as imposing a duty on the parked Good Humor truck to use its flashing lights, a failure to do so would have constituted active negligence. We have found that the court erred in this respect. Therefore, a jury should determine whether the activities of Good Humor were active or passive without any reference to the necessity of having flashing lights. Since Good Humor should be allowed to assert its claim for indemnity against Ihde, the trial court's ruling directing a verdict in favor of counter-defendant is reversed.

Defendant Ihde's first contention on appeal is that it was reversible error for the court to give plaintiff's instruction No. 21 because there was no evidence that the defendant was speeding or was not traveling at the same rate usually traveled on the street in question.

Plaintiff's instruction No. 21, which incorporated portions of section 49 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1965, ch. 95½, par. 146), reads as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
>> No person shall drive any vehicle upon any public highway of this state at a speed which is greater than reasonable and proper with respect to traffic conditions and the use of the highway, or endangers the safety of any person or property; The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when special hazards exist with respect to pedestrians; and speed shall be decreased as may be necessary to avoid colliding with any other person on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.
>
> If you decide that a party violated the statute on the occasion in question, then you may consider the fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence."

Defendant Ihde also objected to the inclusion of the issue of speed in the issues instruction which stated that plaintiff claimed defendant Ihde was negligent because *inter alia* she:

> "(b) operated her motor vehicle at a rate of speed that was greater than reasonable in the circumstances."

Though there was no direct testimony of particular speed, we find that there was ample evidence to permit the reasonable inference and conclusion that defendant Ihde was traveling at a speed which was greater than reasonable and proper with respect to traffic conditions and the use of the highway and that defendant failed to decrease her speed when special hazards existed with respect to pedestrians. Approximately 20 children had congregated around the ice-cream truck as defendant Ihde proceeded south on Maple Avenue toward the rear of the truck from where the ice cream was being dispensed. No cars were parked behind the truck to impede Ihde's view of the playground-park which was situated to the right of the truck, or of the white ice-cream truck itself. Moreover, immediately before the impact, another child, Vicki Paganelli, ran across the street. Linda Bavone testified that the Ihde vehicle was traveling at the speed which most cars traveled down Maple Avenue

when there was no ice-cream truck present. Kazuo Kajimua testified that the Ihde vehicle was not traveling slow but neither was it traveling with any exceptional speed. The impact sounded to him as if a tire had exploded. Numerous witnesses testified to hearing a long, loud screech of braking tires on the pavement emitted from Ihde's vehicle. Officer Koop measured a distance of 93 feet from the front of the Good Humor truck to the front of the Ihde vehicle at the point at which it had stopped.

■■ It is well settled that all that is required in order to justify giving an instruction is that there is some evidence in the record to support the theory set out in the instruction. (*Biggerstaff v. New York, Chicago & St. Louis R. Co.*, 13 Ill. App. 2d 85, 141 N.E.2d 72.) The issue of speed as much as any other particular act of a party is for the jury. Such an instruction calls upon the jury to examine all the facts and circumstances in evidence including the speed of the vehicles, and then to decide whether a party should have reduced his speed to avoid a collision. (*Wrighthouse v. Brown*, 52 Ill. App. 2d 191, 201 N.E.2d 752.) A person can be driving under the speed limit and still be driving too fast for existing conditions. (*Nei v. Contracting & Material Co.*, 93 Ill. App. 2d 226, 236 N.E.2d 264.) We hold that the instruction was properly given because there was sufficient evidence from which the jury could have reasonably inferred that the defendant had failed to exercise reasonable care in reducing her speed in the presence of pedestrians.

■■ Defendant Ihde's next point on appeal is that the trial court should have granted her motion for a directed verdict because where the record establishes a sudden dart out by a pedestrian, the passing motorist is not negligent. We disagree. If a driver has knowledge of the presence of children she may in a particular case be liable even though she did not see the child in time to prevent the injury; ordinarily whether a driver should, under the circumstances have been alerted to the necessity of looking for the presence of children is one of fact for the jury to solve as well as whether the duty, if it arose, has been properly performed. (*Stowers v. Carp.*, 29 Ill. App. 2d 52, 172 N.E.2d 370.) In the instant case, since the issue of negligence was a factual question we are unable to say that the evidence was so compelling as to satisfy the standards set forth in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.

Defendant Ihde submits that the verdict was against the manifest weight of the evidence. It is settled law that a court of review will not upset a judgment as contrary to the manifest weight of the evidence unless a contrary conclusion is clearly evident. Nor are we empowered to reweigh the evidence or test the credibility of witnesses. (*Lobravico v. Checker Taxi Co.*, 84 Ill. App. 2d 20, 228 N.E.2d 196.) We have reviewed the record and find no merit to defendant's contention.

The judgment of the trial court is affirmed as to defendant Ihde and is

reversed and remanded for a new trial as to defendant Good Humor. The trial court's ruling dismissing defendant Good Humor's third party complaint is reversed.

Affirmed in part; reversed and remanded in part.

LORENZ, P. J., and DRUCKER, J., concur.