JAMES C. BANKSTON, Plaintiff-Appellee, v. CHESAPEAKE & OHIO RAILWAY COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 82—1243

Opinion filed October 10, 1984.—Rehearing denied November 26, 1984.

Cornelius P. Callahan, of Chicago, for appellant.

Corboy & Demetrio, of Chicago (Jeffrey A. Kripton, Robert A. Clifford, and Dean A. Robb, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, James C. Bankston, brought this action for damages against defendant, Chesapeake & Ohio Railway Company (hereinafter C&O) under the Federal Boiler Inspection Act (45 U.S.C. sec. 22 *et seq.* (1982)), alleging that he sustained injuries in a fall on the outside catwalk of a locomotive. The jury returned a $300,000 verdict in favor of Bankston and against the C&O. The C&O now appeals, contending that the trial court erred in giving the jury two instructions, each of which concerned the violation of a Federal regulation.

Both instructions were relevant to the issue of liability and not the issue of damages. On the issue of liability, Bankston testified that on October 18, 1977, he was working as an engineer for the C&O. On that day, he was assigned to take a freight train from Charlevoix, Michigan, to Petoskey, Michigan. He had two locomotives, and he and Calvin Cornett, the head brakeman, were on the first locomotive. Bankston positioned the locomotives to "tie into" the train, and when the locomotives reached the standing train cars, Cornett got off the first locomotive to attach the cars. After doing so, Cornett returned to the first locomotive. The train then moved a short distance, but it developed a brake problem. Cornett left the first locomotive to correct the problem. While Bankston waited for Cornett to return, he decided that he would need power from both locomotives to make the trip to Petoskey. Since the second locomotive was running but not supplying power, he decided to go back to the second locomotive to put it "on line" so that it would supply power. Bankston then exited a cab door of the first locomotive and took about two or three steps on an exterior catwalk which ran the entire length of the locomotive. At that point, he slipped on "something" and fell.

Cornett witnessed Bankston's fall. He testified that as he returned to the first locomotive from correcting the brake problem, he saw Bankston take two or three steps on the catwalk and then saw Bankston slip and fall on the catwalk. Cornett looked at the catwalk where Bankston had fallen and saw a puddle of oil. The puddle was approximately one foot by one foot in area.

There was a considerable amount of evidence in the court below concerning the nature of the injuries that Bankston suffered as a

result of his fall. We need not consider this evidence here, however, because it is not relevant to the issues concerning the propriety of the instructions given to the jury.

The C&O first contends that the trial court erred by instructing the jury regarding a possible violation of 49 C.F.R. sec. 230.203(a). The instruction read as follows:

> "There was in force in the United States of America, at the time of the occurrence in question, a Federal regulation, which provided that:
>
>> Each locomotive unit when used in road service shall be inspected at least every 24 hours, except locomotive units operated on through runs exceeding 24 hours may be inspected at the next crew change point immediately beyond the point at which the 24-hour period expires.
>
> If you decide that defendant violated that Federal regulation on the occasion in question, then you may consider that fact together with all the facts and circumstances in evidence in determining whether or not defendant violated the Federal Boiler Inspection Act before and at the time of the occurrence."[1]

According to the C&O, it was reversible error to give this instruction in this case because the uncontroverted evidence in the court below showed that the C&O did inspect the locomotive on which plaintiff claimed he was injured. It was undisputed that Bankston's fall occurred at 7:05 p.m. on October 18, 1977. Defendant's exhibit No. 7, the official inspection report for the locomotive on which Bankston was injured, showed that that locomotive had been inspected at 11 o'clock on October 17, 1977. In addition, Richard LaMange, a road foreman and assistant trainmaster for the C&O, testified concerning the inspection report. He testified, both on direct examination and cross-examination, that the locomotive had been inspected at 11 p.m. on October 17, 1977. No other testimony was introduced as to the time of the inspection. Since Bankston's fall occurred within 24 hours of the inspection, there is no evidence in the record from which the jury could have found a violation of the regulation set forth in the instruction.

■■ ■ "Instructions concerning violations of a statute or ordinance should not be given unless the evidence is adequate to support a finding that a violation actually occurred." (Illinois Pattern Jury In-

---

[1]The word "once" is contained in 49 C.F.R. sec. 230.203(a) but was omitted from the quotation of the regulation contained in the instruction. The regulation provides for inspections "at least once every 24 hours."

structions, Civil, No. 60.00, Introduction, at 250 (2d ed. 1971); *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 1026, 351 N.E.2d 624.) This rule is equally applicable to an instruction concerning the violation of the Federal regulation in question. Since we have held that there is no evidence adequate to support a violation of the regulation, the giving of the instruction was error.

Bankston contends, however, that we should not even reach the question of the propriety of this instruction because the C&O never objected to this instruction at the instruction conference in the court below on the basis that Bankston presented no evidence of periodic inspections. (See *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 350, 415 N.E.2d 337.) He concedes, however, that the C&O did object to the instruction on the basis that it had presented evidence of an inspection within 24 hours prior to the accident. We think that this objection was sufficient to preserve this issue for review.

■ Bankston further contends that the instruction was proper because the inspection report itself does not indicate whether the report was made at 11 a.m. or 11 p.m. on October 17, 1977. He argues that given this circumstance the time of the inspection was a proper question for the jury. This argument, however, ignores Richard LaMange's uncontroverted testimony that the inspection occurred at 11 p.m. There was no evidence to the contrary, and plaintiff's counsel never challenged LaMange's testimony on this point. Moreover, in order to justify giving an instruction, there must be some evidence in the record to support the theory set out in the instruction. (*Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 1028; see also *Shelton v. Sunniday Chevrolet* (1981), 97 Ill. App. 3d 543, 551, 422 N.E.2d 993; *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 196, 285 N.E.2d 217.) We do not believe that an inspection report which does not indicate whether it was prepared at 11 a.m. or 11 p.m. constitutes "some evidence" that the inspection occurred at 11 a.m., where a witness gives uncontradicted testimony that the inspection occurred at 11 p.m. Accordingly, we do not believe that there was some evidence of a violation of the regulation.

■ We do, however, agree with Bankston that the giving of this instruction was harmless error. We base this conclusion upon our reading of the Federal Boiler Inspection Act. Section 23 of the Act (45 U.S.C. sec. 23 (1982)) provides:

> "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the

same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances hereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

In *Lilly v. Grand Trunk Western R.R. Co.* (1943), 317 U.S. 481, 485-86, 87 L. Ed. 411, 415, 63 S. Ct. 347, 351, the United States Supreme Court stated:

"Negligence is not the basis for liability under the [Boiler Inspection] Act. Instead it 'imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate *** without unnecessary peril to life or limb.' [Citations.] Any employee engaged in interstate commerce who is injured by reason of a violation of the Act may bring his action under the Federal Employers' Liability Act, charging the violation of the Boiler Inspection Act. [Citations.] The Act *** is to be liberally construed in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment. [Citations.]"

The Supreme Court further stated: "Conditions other than mechanical imperfections can plainly render equipment unsafe to operate without unnecessary peril to life or limb." (317 U.S. 481, 488, 87 L. Ed. 411, 416, 63 S. Ct. 347, 352.) *Lilly* and later cases make it clear that the jury in this case had a right to find a violation of the Federal Boiler Inspection Act, regardless of whether there was a violation of any Federal regulation, by reason of the presence of oil on the exterior catwalk of the locomotive. See also *Whelan v. Penn Central Co.* (2d Cir. 1974), 503 F.2d 886, 888-91; *Calabritto v. New York, New Haven & Hartford R.R. Co.* (2d Cir. 1961), 287 F.2d 394, 395-97, *cert. denied* (1961), 366 U.S. 928, 6 L. Ed. 2d 387, 81 S. Ct. 1649 ("dangerous conditions caused by foreign substances give rise to liability under section 23.").

Since the evidence is uncontroverted that there was oil on the catwalk and that Bankston slipped on it, we believe the jury would have found that the C&O was liable to Bankston despite the erroneous instruction. Indeed, the jury was given an instruction informing it that the Federal Boiler Inspection Act "is violated when a locomotive, catwalk or passageway either is not in proper condition or is not safe to

operate in the service to which it is put, and if, when used in the active service of the railroad, such use results in unnecessary peril to life or limb" and that if Bankston was injured and his "injury resulted in whole or in part from a violation of the duty imposed by this statute, *** the railroad shall be liable in damages for the injury."

Since this latter instruction was not objected to by the C&O and the evidence clearly supported a finding of liability under this instruction, we are of the opinion that the jury's finding of liability was clearly right upon the facts. Accordingly, we hold that the trial court's decision to give the instruction based on violation of 49 C.F.R. sec. 230.203(a), although erroneous, was harmless, because the result reached by the jury on the issue of liability was not affected thereby and was the only one warranted by the evidence. If we were to reverse and remand for a new trial on the basis of the erroneous instruction, we believe that the new trial would once again result in a verdict and judgment for Bankston.

The C&O's second contention is that the trial court erred by instructing the jury regarding a possible violation of 49 C.F.R. sec. 230.229(d). The instruction reads as follows:

> "There was in force in the United States of America, at the time of the occurrence in question, a Federal regulation which provided that:
>
> > Deck plates and floors of cabs, passageways, and compartments shall be kept free from oil, water, waste, or any obstruction that will create unnecessary peril.
>
> If you decide that defendant violated that Federal regulation on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not defendant violated the Federal Boiler Inspection Act before and at the time of the occurrence."

According to the C&O, it was reversible error to give this instruction in this case because the regulation in question does not apply to an exterior locomotive catwalk.

■■ Bankston contends that the C&O is barred from raising this objection in this court because it never advanced this objection to the instruction at the instruction conference in the court below. We have reviewed the transcript of the instruction conference and agree that the objection was not made at that time. The C&O contends, however, that the waiver rule should not be applied to preclude consideration of the propriety of the instruction because Bankston did not tender the instruction until immediately before the case went to the jury, Bank-

ston's amended complaint did not mention any Federal regulations, and neither Bankston's counsel nor the court below had a copy of Federal regulation 230.229 at the jury instruction conference. We do not decide whether the waiver rule should be relaxed under these circumstances, because we believe that, in any event, the giving of the instruction did not constitute reversible error.

The C&O relies on subsection (a) of 49 C.F.R. sec. 230.229 to argue that subsection (d) of that regulation, the relevant part of which is quoted in the instruction, is only applicable to the inside of a locomotive cab. Subsection (a) provides:

> "(a) Definition. The word 'cab' as used in the rules and instructions in this subpart means that portion of the superstructure utilized for housing the enginemen and parts and appurtenances of the locomotive and through which a passageway is provided for the use of the enginemen."

The C&O's argument that the word "passageways" in subsection (d) refers only to passageways within locomotive cabs appears to be erroneous. Since subsection (d) clearly applies to cabs, and subsection (a) defines a cab to include an interior passageway, there would be no need to refer to the word "passageways" in subsection (d) if the interior passageway was all that was intended to be covered by subsection (d). We do not think that the word "passageways" in subsection (d) should be construed so that it becomes superfluous. Moreover, we observe that the Federal Boiler Inspection Act applies to situations involving the presence of foreign substances outside of the cab of a locomotive. (See *Lilly v. Grand Trunk Western R.R. Co.* (1943), 317 U.S. 481, 486, 87 L. Ed. 411, 415, 63 S. Ct. 347, 351; *Whelan v. Penn Central Co.* (2d Cir. 1974), 503 F. 2d 886, 889; *Calabritto v. New York, New Haven, & Hartford R.R. Co.* (2d Cir. 1961), 287 F. 2d 394, 394.) The C&O does not cite any authority requiring the regulation to be construed more narrowly than the statute, and we decline the opportunity to do so here.

The C&O argues that if we construe the regulation to apply to exterior passageways, we would be imposing a duty on the railroad to keep all rain off outside passageways. Such an impossible requirement, it contends, was not intended by the regulation. The regulation, however, refers to "unnecessary peril," and we need not decide here whether rain is an "unnecessary peril."

Even if we were to assume that the Federal regulations were inapplicable to the facts of this case, we think that for the same reason that the giving of the instruction concerning a possible violation of the Federal regulation on inspection was harmless error, the giving of

this instruction relating to oil on passageways, if error, was harmless error.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.