ELDON R. WILLIAMS, Plaintiff-Appellant, v. HARLEY L. GARMANE, Defendant-Appellee (Thomas R. Johnson, Plaintiff).

Fifth District   No. 5—91—0065

Opinion filed April 7, 1992.

Paul Christenson, of Bailey & Christenson, of Murphysboro, for appellant.

Phillip G. Palmer, of Brandon & Schmidt, of Carbondale, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Eldon R. Williams, appeals from the October 12, 1990, judgment order entered by the circuit court of Jackson County on the jury verdict in favor of defendant, Harley L. Garmane, and the January 3, 1991, order denying plaintiff's post-trial motion. The sole issue presented by plaintiff for our review is whether the circuit court erred in giving defendant's instruction No. 16. This instruction, given over plaintiff's objection, stated as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching *** a hill crest *** or when a special hazard exists with respect to *** other traffic or by reason of weather or highway conditions.
>
> If you decided [sic] that a party violated the statute on the occasion in question, then you may consider that fact, together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, a party was negligent before and at the time of the occurrence." (Illinois Pattern Jury Instructions, Civil, No. 60.01 (3d ed. 1992) (hereinafter IPI Civil 3d No. 60.01).)

(Ill. Rev. Stat. 1987, ch. 95½, par. 11—601(a).) Plaintiff contends that it was error to have given this instruction because there was no evidence in the trial record to support a conclusion that plaintiff violated the Illinois Vehicle Code statute requiring him to reduce speed at the time of the accident or that a violation was a proximate cause of plaintiff's injuries. Plaintiff maintains that the outcome of his jury trial was substantially prejudiced by the giving of this instruction and asks this court to reverse the October 12, 1990, judgment and January 3, 1990, order of the circuit court of Jackson County and remand this cause for a new trial.

The relevant evidence adduced at trial indicates that plaintiff was injured on September 3, 1988, when the pickup truck he was driving left Highway 127 near Murphysboro, Illinois, hit an embankment and overturned, end over end. Plaintiff testified that he was driving north on Highway 127, and at the bottom of a hill he passed a slower-moving vehicle which was traveling about 30 miles

per hour. Plaintiff testified that as he was going up the long grade of this hill he was traveling about 45 miles per hour.

When he reached the crest of the hill he saw a set of headlights in his lane of the highway. As soon as he saw the headlights, plaintiff testified, he hit his brakes and went into a slide but was still in control of his vehicle as he steered it onto the shoulder of the highway where he lost control, struck the embankment and overturned. Plaintiff testified that he took this action in order to avoid a head-on crash.

Plaintiff received injuries to his right eye, arm, finger and shoulder and incurred medical bills in excess of $10,000 as a result of this accident. The medical bills were admitted into evidence as plaintiff's exhibits 9 through 23. Plaintiff also testified that he lost nine weeks of work as a result of the accident and that his normal work week was 40 hours and pay was $7.16 per hour. Plaintiff also claimed damages for pain and suffering.

On cross-examination, plaintiff admitted that he was familiar with the area of the accident and knew there was a crest at the end of the hill and a decline after the crest. He also admitted that it was dark and raining the night of the accident. Plaintiff further admitted that there was no one approaching the area in the southbound lane of traffic when he determined to leave the highway in order to avoid a collision, but he felt it would have been more dangerous to have steered his car into the oncoming lane of traffic.

Defendant was called by the plaintiff as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1102). He testified that on the evening of September 3, 1988, he was traveling south on Highway 127 in his pickup truck when he was flagged down by two men whose vehicle had slid off the road crossways into a ditch. Defendant observed that part of their vehicle was sticking out into the northbound lane of the roadway by approximately 3½ feet.

Defendant determined that the only way he could pull the vehicle from the ditch was to move his truck to the left side of the roadway, position it so that two wheels were on the road and two were on the shoulder, and then try to turn the vehicle. Defendant removed a tow strap and three flares from his truck and was going to set a flare in order to warn oncoming motorists when plaintiff's truck came over the crest from the south, turned, hit the shoulder and went into the air. Defendant stated that the only thing he could do was get out of the way.

Defendant testified on direct examination that Highway 127 is a two-lane, north-and-south highway in the area of the accident. Defendant decided to help the men because their vehicle had no lights and would have been a hazard to northbound traffic. He testified that when he parked his truck partially in the northbound lane, both headlights and emergency-light flashers were operating on his truck. Defendant also testified that the two men fled the scene shortly after the accident.

Sergeant David Allen of the Jackson County sheriff's department testified that he reported to the scene of plaintiff's accident on September 3, 1988. He spoke with James McKinney and Kelly Vinson, two eyewitnesses to the accident, as well as defendant. Sergeant Allen also made some measurements of skid marks and other observations at the scene. Sergeant Allen was asked if he had determined whether plaintiff was driving in excess of the speed limit and if he had determined what speed plaintiff's vehicle had been going. Defendant's objections to both questions were sustained by the court.

Sergeant Allen confirmed that the vehicle in the ditch was perpendicular to the highway and stated that its front tires were positioned directly on the white line which marks the boundary of the road. Sergeant Allen reported that tire marks, indicating that plaintiff had applied the brakes, started almost immediately after the crest of the hill and continued to the point where the truck left the highway. These tire or skid marks extended a total distance of 142 feet 9 inches. The distance between the vehicle in the ditch and the point where the skid marks ended was 145 feet.

James McKinney testified that on the evening of September 3, 1988, he and Kelly Vinson were traveling northbound on Highway 127 in McKinney's vehicle. He stated that at the bottom of a hill he was passed by a truck heading north. McKinney stated that if the speed limit was 40, they were traveling approximately five miles under the limit. He admitted that in a previous statement he had estimated their speed at 45 miles per hour.

As their vehicle crested the hill, McKinney saw the brake lights of the truck which had passed them. The truck then swerved off to the right-hand side of the road, hit an embankment and flipped. He testified that he saw lights from another pickup truck in the northbound lane. This vehicle was parked in the traffic lane with its headlights on, and he recalled seeing yellow lights beneath the headlights but did not remember if they were flashing.

McKinney stopped his vehicle about 20 yards before the place where the truck had flipped, and he did not lose control of his vehicle as he was stopping. McKinney called the police for assistance, and he and Vinson went to assist the driver and his passenger. Before the police arrived, McKinney asked defendant to move his truck after a third vehicle came over the crest of the hill and McKinney heard its tires screech. McKinney stated that the third vehicle did not lose control when its brakes were applied.

Kelly Vinson testified that she was a passenger in Jim McKinney's vehicle on the evening of September 3, 1988. As they were going up a hill, a truck had passed them. Vinson stated that they were driving quite slowly so that the people who passed them were not speeding. She also testified that she and McKinney were going about 45 miles an hour. As they went over the crest of the hill, she was momentarily looking down, but looked up in time to see the truck on its last bounce before it landed. Vinson also saw a truck with bright lights facing them in their lane. She could not remember whether or not that truck had its hazard lights on. Their vehicle did not lose control when McKinney brought it to a stop.

Plaintiff alleged in his complaint, *inter alia*, that the collision of his truck with the embankment was the direct and proximate result of defendant's failure to drive his vehicle in the proper southbound lane; stopping and parking his vehicle on the roadway below the crest of a hill on the wrong side of the road creating a dangerous hazard to other motorists on the highway; and failure to give any warning of any kind to other motorists that he was parked in the middle of the highway. As an affirmative defense, defendant alleged that plaintiff's negligence was the direct and proximate cause of the collision and that said negligence consisted of the following acts or omissions: plaintiff drove his vehicle at a speed greater than was reasonable and proper under the circumstances, failed to keep his vehicle under proper control, failed to keep a proper lookout ahead, and failed to pass defendant's vehicle on the left when said lane of traffic was free of oncoming traffic.

■ Plaintiff argues that no instructions concerning violations of a statute should be given unless the evidence is adequate to support a finding that a violation actually occurred, citing in support of this proposition *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607, and *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624. Plaintiff also argues that no instruction concerning violation of a statute should be given unless that violation was a proximate cause of the injury, citing *French v. City of Springfield* (1976),

65 Ill. 2d 74, 357 N.E.2d 438. The notes on use for IPI Civil 3d No. 60.01 state:

> "This instruction should be given only where the evidence would support a finding that the injury complained of was proximately caused by a violation of a statute, ordinance, or administrative regulation, rule, or order intended to protect against such an injury, and that the injured party is within the class intended to be protected by the statute, ordinance, or administrative regulation." (IPI Civil 3d No. 60.01, Notes on Use, at 60—7.)

The Comments for this same IPI instruction further state that there must be evidence from which the jury can find that the violation was a proximate cause of the injury. IPI Civil 3d No. 60.01, Comment, at 60—8.

Defendant argues, however, that the giving of defendant's instruction No. 16 did not constitute reversible error because section 11—601 of the Illinois Vehicle Code places an affirmative duty on drivers to reduce their speed before approaching the crest of a hill, when approaching a vehicular hazard, or when mandated by weather or highway conditions. (See Ill. Rev. Stat. 1989, ch. 95½, par. 11—601(a).) Defendant maintains that the testimony indicates that plaintiff engaged in passing the McKinney vehicle as he approached the crest of the hill and that it was dark and raining. Defendant concludes that from this evidence a reasonable jury could infer that plaintiff had not sufficiently reduced his speed as he approached the crest of the hill. Thus, the giving of defendant's instruction No. 16 was not error and, when considered along with all of the evidence, was not prejudicial to the point of constituting reversible error.

■ We note that section 11—601(a) of the Illinois Vehicle Code, the statute defendant contended was violated by plaintiff in defendant's instruction No. 16, does not address driving over the maximum limit; rather, it imposes a duty on drivers to decrease their speed even when driving under the maximum limit. (*Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 405, 487 N.E.2d 798, 804.) A person can be driving under the speed limit and still be driving too fast for conditions. (*Figarelli*, 39 Ill. App. 3d at 1028, 351 N.E.2d at 629.) Although not set forth in defendant's instruction No. 16, section 11—601(a) of the Illinois Vehicle Code initially states that "[n]o vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or en-

dangers the safety of any person or property." Ill. Rev. Stat. 1989, ch. 95½, par. 11—601(a).

Plaintiff is arguing, however, that there was no evidence that he failed to decrease his speed at the crest of the hill. We agree. Plaintiff, James McKinney and Kelly Vinson all testified to speeds their respective vehicles were traveling at the bottom of the hill or as they were going up the long grade of the hill. Although defendant argues that the passing of McKinney's vehicle by plaintiff as the two vehicles approached the hill creates an inference that plaintiff did not reduce his speed as he approached the crest of the hill, a review of the testimony of plaintiff, McKinney and Vinson indicates that plaintiff had completed his pass of McKinney's vehicle before reaching the crest of the hill.

Moreover, plaintiff was never asked whether or not he reduced his speed prior to reaching the crest of the hill. Plaintiff testified that as soon as he saw the headlights of defendant's truck he braked his vehicle and started skidding, but again, there was no evidence that he had not also braked his vehicle prior to reaching the knoll. Although McKinney testified that he saw plaintiff's brake lights after McKinney's vehicle had crested the hill, McKinney was also not asked whether he had seen plaintiff's brake lights prior to the crest of the hill. While there was testimony by Sergeant Allen with regard to the length of plaintiff's skid marks, Allen was not permitted to testify whether plaintiff was driving in excess of the speed limit or if he had determined what speed plaintiff's vehicle had been going due to the court's sustaining of defendant's objections. An opinion concerning what speed plaintiff had been traveling when he began braking his vehicle would have provided sufficient evidence as to whether plaintiff had applied his brakes when he approached the hill.

With regard to the duty to decrease speed when a special hazard exists with respect to other traffic or by reason of weather or highway conditions, defendant presented no evidence, by way of an accident reconstructionist or otherwise, that because of the darkness, rain or grade of the hill or its decline after the crest plaintiff was driving too fast for conditions. Defendant argues, however, that evidence of this fact was of record by inference because McKinney and the next driver who came upon the scene had no difficulty controlling their vehicles and bringing them to a safe stop at the scene of the accident whereas plaintiff left 142 feet of skid marks before leaving the road. Defendant notes that an instruction with regard to a statutory violation is properly given when there is

sufficient evidence from which the jury could have *reasonably inferred* that the party failed to exercise reasonable care in reducing her speed. (*Figarelli*, 39 Ill. App. 3d at 1028, 351 N.E.2d at 629.) The *Figarelli* court discussed an instruction given regarding a motorist's duty not to drive at an unreasonable speed when a special hazard exists with respect to pedestrians. Plaintiff's decedent, a five-year-old child, was struck and killed by defendant's vehicle when the decedent stepped into the path of the car from in front of a parked ice cream truck. The court noted that witnesses had testified that defendant was "proceeding down the street at a speed which evidenced no consideration for the fact that an ice-cream truck was present" and "was traveling at the speed which most cars traveled down [that street] when there was no ice-cream truck present." (*Figarelli*, 39 Ill. App. 3d at 1024, 1027-28, 351 N.E.2d at 626, 628-29.) In the instant case, however, there was no testimony whatsoever of plaintiff's speed at the crest of the hill or that plaintiff was traveling too fast on this hilly, wet and dark road. Indeed, Ms. Vinson testified that "they weren't speeding." Without such evidence we do not believe there was sufficient evidence from which the jury could have reasonably inferred that plaintiff failed to exercise reasonable care in reducing his speed because of the hill, weather, or special hazards.

We therefore hold that the circuit court erred in giving defendant's instruction No. 16. Because this instruction also presented defendant's affirmative defense to the jury, we cannot say that its giving was harmless. Accordingly, the October 12, 1990, judgment of the circuit court of Jackson County is reversed and this cause will be remanded for a new trial.

Reversed and remanded.

GOLDENHERSH, P.J., and CHAPMAN, J., concur.