**Leonard BOLDEN**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2005.

Decided April 1, 2005.

Reargument En Banc Denied
May 17, 2005.

Saul H. Krenzel, Philadelphia, for appellant.

William L. Myers, Jr., Philadelphia, for appellee.

1. 49 U.S.C. § 20701 et seq.

2. Construing the Law is a purely legal question; therefore, the Court's scope of review is

BEFORE: COLINS, President Judge, and LEADBETTER, J., and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

This case involves the Southeastern Pennsylvania Transportation Authority's (SEPTA) appeal from the orders of the Court of Common Pleas of Philadelphia County wherein SEPTA's motion in limine to exclude any reference to the Locomotive Inspection Act (LIA)[1] at trial was denied and a jury verdict was entered against SEPTA under the LIA. We affirm.[2]

Bolden worked as a conductor for SEPTA's regional rail line on the R5 route running between Lansdale and Paoli when he was injured. The train Bolden was riding on left Suburban Station headed north to Lansdale and consisted of three cars. The cars were numbered 420, 419, and 402, with car 420 as the lead car, car 419 as the middle car, and car 402 as the rear car. Cars 420 and 402 were electronically propelled railcars capable of pulling the attached cars. Each of the three cars has two entrances separated from the passenger compartment by parlor doors, which serve to keep passengers out of the vestibule area while the train is in motion, as well as to keep in warm or cool air depending on the weather. Each parlor door has a hydraulic closing mechanism attached to it that closes the doors automatically and also gives resistance to the door being opened. Upon reaching Lansdale, the train switched ends, meaning that car 402 became the lead car and car 420 became the rear car, with car 419 remaining in the middle. After the ends were changed, Bolden made his way to the now-

plenary and the standard of review is error of law. *Wagner v. Wagner,* 564 Pa. 448, 768 A.2d 1112 (2001).

lead car 402. Upon entering the vestibule between cars 419 and 402, Bolden attempted to enter the passenger compartment of car 402 through the parlor door. The parlor door's closing mechanism malfunctioned and did not provide the resistance as it normally would. The lack of expected resistance caused Bolden to fall and injure his shoulder as he attempted to exert the necessary force to open the door. Bolden's claim against SEPTA under the LIA is appealed to this Court.

LIA Section 20701 states,

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.

At issue here is whether a door closing mechanism is a "part and appurtenance" within the meaning of the LIA. SEPTA argues that *Southern Ry. Co. v. Lunsford*, 297 U.S. 398, 56 S.Ct. 504, 80 L.Ed. 740, (1936), controls the issue. In *Lunsford*, the U.S. Supreme Court held, "With reason, it cannot be said that Congress intended that every gadget placed upon a locomotive by a carrier, for experimental purposes, should become part thereof within the rule of absolute liability." 297 U.S. at 402, 56 S.Ct. 504. Further, the Supreme Court stated, "[w]hatever in fact

is an integral or essential part of a completed locomotive, and all parts and attachments definitely prescribed by lawful order of the Interstate Commerce Commission (ICC), are within the statute. But mere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not." *Id.* No one contends that the closing mechanism SEPTA employed here was experimental. Further, closing mechanisms are not mandated by any regulation of the ICC. In applying the language in *Lunsford,* the trial court reasonably distinguished that holding based upon factual differences between *Lunsford* and the present case. *Lunsford* clearly controls cases where experimental devices are used or carriers have failed to install required equipment. The present case deals with a failure to maintain equipment that is useful and increases safety on a locomotive car, but is neither experimental nor required.

Under the relevant case law a parlor door closing mechanism was never held to be a "part or appurtenance" of a locomotive under the LIA. Nevertheless, the LIA was also never construed to exclude such closing mechanisms on parlor doors. Consequently, this Court must determine whether the trial court erred in holding that the closing mechanism is a "part and appurtenance" within the meaning of the LIA. The closing mechanism that failed in this case and led to Bolden's injury was located within the locomotive car at the time the injury occurred. Therefore, relief is potentially available under the LIA because of the closing mechanism's location on the locomotive. The closing mechanism serves a useful purpose and enhances safety. The prime purpose of the LIA is to enhance safety of employees and passengers.[3] Passing through such doors is nec-

---

**3.** *Lilly v. Grand Trunk Western Railroad Co.,* 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411 (1943) ("The Act, like the Safety Appliance Act, is to be liberally construed in light of its

essary for conductors such as Bolden to perform their duties. The closing mechanism was correctly found to be a "part and appurtenance" of the locomotive under the liberal construction of the LIA. The closing mechanism falls within the statutory language as a "part and appurtenance" that must be maintained "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1).

This Court finds persuasive a series of cases cited in Bolden's brief involving injuries that occurred to railroad employees entering and exiting locomotives. *Gowins v. Pennsylvania R. Co.*, 299 F.2d 431 (6th Cir.) (slippery walkways on engine), *cert. denied*, 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962); *Bolan v. Lehigh Valley R. Co.*, 167 F.2d 934 (2d Cir.1948) (injury while attempting to board train using bent and worn step); *Louisville & N.R. Co. v. Botts*, 173 F.2d 164 (8th Cir.1949) (injury after slipping on floorboard while mounting train); *Whelan v. Penn Central Co.*, 503 F.2d 886 (2d Cir.1974) (ice on step assembly at rear of locomotive); *Bankston v. Chesapeake & Ohio R. Co.*, 128 Ill. App.3d 166, 83 Ill.Dec. 386, 470 N.E.2d 512 (1984) (slippery catwalks on locomotive); *Delevie v. Reading Co.*, 176 F.2d 496 (3d Cir.1949) (gear mechanism above footboard unsafe for access to cab). The foregoing cases are factually similar to the case at hand in that they involve a failure to maintain certain parts of a locomotive that are necessary for ingress and egress and were found to be covered by the LIA.

This Court notes SEPTA's extensive arguments that the *Lunsford* test of "integral or essential" was not applied by the trial court in determining whether the closing mechanism was a "part and appurtenance" under the LIA. We reject that argument on the ground that the trial court correctly distinguished the facts of this case from the *Lunsford* case's facts and holding. Nevertheless, we do not believe that the closing mechanism would necessarily fail the *Lunsford* test. The door to which the closing mechanism is attached is clearly "integral or essential," for without it there would be no access for crew or passengers to the locomotive car while the train is moving. The closing mechanism itself serves only to enhance the safety and comfort of passengers and crew alike. Because the door is absolutely "integral or essential" and the closing mechanism makes the door safer to operate, it should fall within a liberal construction of the LIA and its purpose of enhancing safety under the *Lunsford* test at any rate. Therefore, even if the trial court erred, and we do not think it did, in not applying the *Lunsford* test, such error would be harmless.

Accordingly, we affirm.

### ORDER

AND NOW, this 1st day of April 2005, the order of the Court of Common Pleas of Philadelphia County is affirmed.

---

prime purpose, the protection of employees and others by requiring the use of safe equipment")(internal citations omitted); *Urie v. Thompson*, 337 U.S. 163, 190, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) ("[W]e do not doubt that the prime purpose of the Boiler Inspection Act [now the LIA] was the protection of railroad employees and perhaps also of passengers and the public at large from injury due to industrial accident") (internal citations omitted); *Matson v. Burlington Northern Santa Fe Railroad*, 240 F.3d 1233, 1235 ("FELA and LIA are 'remedial and humanitarian' statutes that impose two separate types of liability to protect the safety of railroad employees") (citing *King v. S. Pac. Transp. Co.*, 855 F.2d 1485, 1488 n. 1 (10th Cir.1988)).